UNITED STATES of America,
Plaintiff-Appellant,

v.

Pablo BERRIOS et al., Defendants-
Appellees.

No. 1111, Docket 74-1365.

United States Court of Appeals,
Second Circuit.

Argued June 7, 1974.

Decided Aug. 8, 1974.

James W. Dougherty, Sp. Atty., U.S. Dept. of Justice, Edward John Boyd, V, U. S. Atty., E. D. of N. Y., Denis E. Dillon, Sp. Atty., U. S. Dept. of Justice, on the brief, for plaintiff-appellant.

Martin Garbus, New York City, on the brief for Pablo Berrios, defendant-appellee.

Michael B. Standard, New York City (Rabinowitz, Boudin & Standard, New York City, on the brief), for William Nuchow and Julius Zaretsky, defendants-appellees.

Phylis Skloot Bamberger, Atty., New York City (William J. Gallagher, The Legal Aid Society of New York City, Federal Defender Service Unit, on the brief), for Matthew Principe, defendant-appellee.

Before KAUFMAN, Chief Judge, and MANSFIELD and MULLIGAN, Circuit Judges.

MANSFIELD, Circuit Judge:

At issue on this appeal by the government is the question of whether the district court, after the defendant Pablo Berrios alleged that in this case he had

been the victim of selective and discriminatory prosecution by the government, acted properly and within its powers in dismissing the indictment against all defendants because of the government's refusal to turn over to the court for disclosure to defense counsel a memorandum that had been sent by the prosecutor to the United States Department of Justice recommending that prosecution of the defendants be initiated. We vacate the district court's order and remand the case for further proceedings consistent with this opinion.

Some eighty years ago, the Supreme Court observed that the administration of laws "with an evil eye and an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances" constitutes a denial of equal protection. Yick Wo v. Hopkins, 118 U.S. 356, 373–374, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Nothing can corrode respect for a rule of law more than the knowledge that the government looks beyond the law itself to arbitrary considerations, such as race, religion, or control over the defendant's exercise of his constitutional rights, as the basis for determining its applicability. See Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Selective prosecution then can become a weapon used to discipline political foe and the dissident, see, e. g., United States v. Falk, 479 F.2d 616 (7th Cir. 1973); United States v. Steele, 461 F.2d 1148 (9th Cir. 1972). The prosecutor's objective is then diverted from the public interest to the punishment of those harboring beliefs with which the administration in power may disagree. This case involves such allegations.

In an indictment filed on January 8, 1973, appellee Berrios stands accused of holding union office in violation of 29 U.S.C. § 504, which provides that no person who has been convicted of the crime of arson, among others, shall within five years of such conviction serve as an officer or employee of a labor organization.[1] Berrios, it is alleged, was convicted of the crime of arson by the Supreme Court of New York in 1971 and, notwithstanding that conviction, within five years thereafter became Trustee and a member of the Executive Board of Teamsters Union Local 840. His success in achieving these positions is the cause of his present plight. The other appellees (Nuchow, Principe and Zaretsky) were later charged with violating § 504 by wilfully and knowingly permitting Berrios to hold union office after his conviction.

Berrios contends that he was chosen for prosecution because he was counted among the few Teamster officials who were in 1972 outspoken in their support of Senator McGovern for President as against President Nixon and because he was at that time spearheading an effort to unionize the Marriott Restaurant Chain, an enterprise that apparently enjoys close ties with President Nixon and his family. In support of his charge of selective prosecution, Berrios submitted the affidavit of his counsel, Martin Gar-

---

1. 29 U.S.C. § 504(a) reads in pertinent part: "No person who is or has been a member of the Communist Party or who has been convicted of, or served any part of a prison term resulting from his conviction of, robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, assault which inflicts grievous bodily injury, or a violation of subchapter III or IV of this chapter, or conspiracy to commit any such crimes, shall serve—

    (1) as an officer, director, trustee, member of any executive board or similar governing body, business agent, manager, organizer, or other employee (other than as an employee performing exclusively clerical or custodial duties) of any labor organization, or

    (2) as a labor relations consultant to a person engaged in an industry or activity affecting commerce, or as an officer, director, agent, or employee (other than as an employee performing exclusively clerical or custodial duties) of any group or association of employers dealing with any labor organization,

during or for five years after the termination or his membership in the Communist Party, or for five years after such conviction or after the end of such imprisonment . . . . "

bus, Esq., which states that he and his client "believe" that (1) there have been only three prosecutions under § 504 since 1969;[2] (2) Mr. Marriott has been a close friend of the President and a substantial contributor to his political campaign; (3) Donald Nixon, the President's brother, is a vice-president of Marriott; (4) Herbert Kalmbach, attorney for Marriott, was also the President's personal attorney; (5) Charles Colson, formerly counsel to the President and later counsel to the Teamsters Union was a "prime mover in the prosecution", and (6) there are hundreds of unions with officers who have prison records.[3] Although Berrios' counsel later pointed to newspaper articles as the basis for some of these beliefs, no evidence or facts were offered to show the basis of his belief that numerous other violations of 29 U.S.C. § 504 had gone unprosecuted. Nevertheless, on the strength of the affidavit, Berrios moved for a hearing on his defense of selective prosecution.

Upon oral argument, which was conducted by the court for the purpose of determining whether a hearing was required, counsel for Berrios urged that he had shown enough to warrant further exploration by way of a hearing. As might be anticipated, the government took the opposite view, pointing out the vagueness of Berrios' allegations and explaining that the prosecutor had learned of Berrios' criminal record while investigating a charge of arson lodged against him for an attempted firebomb attack on a Marriott restaurant. (Berrios was acquitted of this charge after a jury trial before Judge Judd on February 7, 1973). Judge Judd suggested that the charge of selective prosecution might be resolved without a hearing if the government would turn over a copy of the letter from the prosecutor to his superiors, which originally sought authorization for the prosecution of Berrios. At first the government resisted this idea on the ground that the material sought was confidential. Eventually, however, the United States Attorney proposed a compromise: let the judge view the memorandum *in camera* and, if he should determine that there was nothing to support Berrios' claim, return it to the government without disclosure to the defense. Defense counsel, dissatisfied with the notion of a completely *in camera* inspection, prevailed upon the judge to order that the defendants should have access to the memorandum which would be redacted only to the extent necessary to protect against disclosure of any confidential grand jury testimony.

When the government declined to comply with the disclosure order Judge Judd, acting upon Berrios' motion for dismissal of the indictment, see Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), filed an opinion and order on January 7, 1974, directing that the indictment be dismissed unless the government within thirty days submitted the memorandum to the court for its study and for release to the defendants of any portions thereof which the court should determine "are not required to be kept confidential." In his opinion Judge Judd held that Berrios' allegations warranted a hearing on the selective prosecution issue and that Berrios' "offer of proof"

---

**2.** A letter dated May 16, 1973 from the Chief Management and Labor Section, Department of Justice, addressed to Berrios' counsel, reports that since July, 1969, there had been three other indictments filed charging violations of 29 U.S.C. § 504. However, by letter dated June 12, 1973, the Assistant Director for Regulations and Administrative Rulings, U. S. Department of Labor, reported to Berrios' counsel that there had been approximately nine other prosecutions during the first ten years of administration of § 504. Neither source refers to any unprosecuted violations of § 504.

**3.** Neither Berrios nor Garbus has identified any of the unions or officers. Moreover, they fail to state whether the officers had been convicted of any of the felonies specified by § 504, or, if so, whether the convictions had taken place within five years prior to the officers' assumption of union office, both of which conditions must be proved to establish a violation of § 504.

was sufficient to create a prima facie case of selective prosecution. Upon the government's refusal to produce the memorandum on the terms specified by Judge Judd, the court, on February 8, 1974, dismissed the indictment, from which the Government appeals.

## DISCUSSION

■■ To support a defense of selective or disciminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie,* (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as "intentional and purposeful discrimination." See Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1943); Moss v. Hornig, 314 F.2d 89, 92–93 (2d Cir. 1963); United States v. Ahmad, 347 F.Supp. 912 (M.D.Pa.1972), aff'd sub nom., United States v. Berrigan, 482 F.2d 171 (3rd Cir. 1973); United States v. Falk, 479 F.2d 616 (7th Cir. 1973) (en banc); United States v. Crowthers, 456 F.2d 1074 (4th Cir. 1972); United States v. Steele, 461 F.2d 1148 (9th Cir. 1972), See Comment, "The Right to Nondiscriminatory Enforcement of State Penal Laws," 61 Colum.L.Rev. 1103 (1961). Mere "conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962).

■ In the present case, in an effort to support his defense of selective prosecution, Berrios sought a hearing and disclosure of certain government records solely upon the basis of his counsel's affidavit to the effect that he and his clients "believe" that facts indicating a vindictive motive on the part of the government exist (as outlined above) and their further belief that "there are hundreds of unions who have men with prison records sitting as officers." In support of the latter claim, although Berrios introduced a letter from the Department of Justice to the effect that there had been three indictments of others for violations of § 504 since July 1969, he neither named any unprosecuted violators nor identified any of the unions in which they allegedly held office.

Clearly the defendants are not entitled under Rule 16, F.R.Crim.P., to disclosure of the government records sought by them, since Rule 16(b) expressly exempts from discovery "reports, memoranda, or other internal government documents made by government agents in connection with the investigation and prosecution of the case . . ." Upon an adequate preliminary showing of relevancy, however, the district court may hold a hearing upon a motion raising defenses or objections, Rule 12(b)(4), F. R.Crim.P., and issue a subpoena directing the government to produce books, papers or records for introduction at the hearing, Rule 17(c), F.R.Crim.P. Upon the meagre preliminary showing made here, we doubt whether we would have granted a hearing or ordered the production of evidence for such a hearing, since Berrios appears frankly to have embarked upon a fishing expedition. The effect could be to encourage use of the defense of selective prosecution, however baseless, as a means of obtaining discovery to which the defense would not otherwise be entitled. In order to show what has been described by the Third Circuit as a "colorable basis" entitling the defense to subpoena documentary evidence required to establish a selective prosecution defense, see United States v. Berrigan, 482 F.2d at 177, 181, we would first require some evidence tending to show the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of

these elements. In this case, Berrios has not pointed to the existence of a single unprosecuted violation of § 504 on the part of others, even though proof of this essential element would not necessarily be in the government's exclusive control. See, e. g., United States v. Falk, 479 F.2d 616 (7th Cir. 1973) (*en banc*).[4] Nor has Berrios represented that the government's files, including the prosecutor's recommendation that prosecution be initiated, will in fact support his beliefs.

■■■ Notwithstanding the apparent weakness of Berrios' claim, we recognize that the decision to permit a hearing and, in anticipation thereof, to authorize a subpoena of evidence in the government's possession, lies largely in the trial judge's discretion. As the Supreme Court has just stated in United States v. Nixon, —— U.S. ——, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974):

> "Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues. Without a determination of arbitrariness or that the trial court finding was without record support, an appellate court will not ordinarily disturb a finding that the applicant for a subpoena complied with Rule 17(c). See,

e. g., Sue v. Chicago Transit Authority, 279 F.2d 416, 419 (CA7 1969); Shotkin v. Nelson, 146 F.2d 402 (CA10 1944)."

■■■ Although we might have proceeded differently in this case, we cannot on this record say that Judge Judd abused his discretion in ordering the government to turn over to him for "study" its memorandum recommending prosecution. However, his opinion and order filed January 7, 1974, went too far in directing the government to surrender the memorandum "for release to the defendants of any portions thereof which the court shall determine are not required to be kept confidential."

Although Berrios does not object to redaction of any portions of the prosecutor's memorandum found by the court to be entitled to protection from disclosure on the grounds of confidentiality (e. g., the substance of grand jury testimony, see Rule 6(e), F.R.Crim.P.) he would at most be entitled under Rule 17(c), F.R. Crim.P. to introduce at a hearing only material that is demonstrably relevant, i. e., which would tend to establish the elements of his defense of selective and discriminatory prosecution. Even under the district court's liberal ruling the test for disclosure should be the relevancy of the evidence to the specific defense for which it is sought, not its lack of confidentiality. The government is entitled

4. Although Berrios relies heavily on *Falk*, it is clearly distinguishable. There the defendant, who had been indicted for failure to possess his Selective Service draft card, offered to prove that approximately 25,000 Selective Service registrants who had disposed of their draft cards had not been prosecuted, even though the government was aware of many of these other violations. Indeed, it was conceded that there existed an official policy statement issued by the Director of the Selective Service System to the effect that those who turned in their cards should not be prosecuted. Furthermore, the Assistant U. S. Attorney in charge of the prosecution of Falk advised that Falk had been singled out for prosecution because of his draft-counselling activity, after the decision to prosecute had been approved by a chain of higher officials of the Department of Justice.

It is also not without significance that the court in *Falk* found defendant's evidentiary offering sufficiently strong to establish a "prima facie case" of selective prosecution, thus justifying a shift in the burden of proof to the government—i. e., the burden of proving that the decision to prosecute was free of discriminatory taint. *Id.* 479 F.2d at 623–624. See also United States v. Steele, 461 F.2d 1148, 1152 (9th Cir. 1972); United States v. Crowthers, 456 F.2d 1074, 1078 (4th Cir. 1972). By contrast, we are asked here to gauge the quantum of proof required to support merely an order for evidentiary production. The result of such an order, when appropriately guarded by preliminary *in camera* review, is of far less serious consequence to the government than is shifting the ultimate burden of proof.

to have withheld from the defendants all material in the memorandum which does not relate to the defense of selective prosecution. On the other hand, the government is not entitled, on a mere claim of generalized confidentiality, to withhold material that is relevant to the defense.

The order of the district court is vacated and the case is remanded for proceedings consistent with this opinion. Against the possibility that, upon remand, a difference might arise between the court and the government regarding the relevancy of any portions of the memorandum which the court proposes to release to the defendants, we retain jurisdiction for the purpose of review of the court's ruling. Should Judge Judd decide, on the other hand, not to release all or any part of the memorandum to the defendants, we direct that the entire memorandum be sealed and retained by the court so that it will be available for such review after trial as may become necessary. United States v. Nixon, *supra*.