UNITED STATES of America, Appellee,

v.

William R. OJALA, Appellant.

No. 76–1052.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1976.

Decided Nov. 8, 1976.

Jerod H. Peterson and Robert Lyman, Legal Rights Center, Minneapolis, Minn., for appellant.

Robert G. Renner, U. S. Atty., Minneapolis, Minn., for appellee.

Before BRIGHT, STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

William R. Ojala appeals from his conviction after a trial by jury for willfully and knowingly failing to make timely filings of his personal income tax returns for the years 1969, 1970, and 1971 in violation of 26 U.S.C. § 7203. His principal contention on appeal is that he was targeted for prosecution because of his outspoken opposition to the Vietnam war, and that the District Court therefore erred in denying his several motions to dismiss the indictment for improper selective prosecution. He also contends (1) that the court improperly admitted prejudicial hearsay into evidence; (2) that the government's closing argument was prejudicially inflammatory; and (3) that the District Court failed properly to instruct the jury on the element of "willfulness."

Appellant is an attorney and former Minnesota state representative and was, during the late 1960's and early 1970's, a vigorous opponent of the Vietnam war. His activities included campaigning for elective office on an anti-war platform, introducing legislative anti-war resolutions, assisting the American Friends Service Committee, and serving as a draft resistance counselor. Appellant testified that it was during this period of anti-war activity that he decided not to file his state and federal personal income tax returns. He made his decision not to file for the years 1969, 1970, and 1971 despite his knowledge that he had sufficient income to require filing for those years and despite his knowledge of the consequences of such failure. At first, appellant's failure to file these returns was known only by his friends and casual associates, although he made no concerted effort to keep this fact private.

On April 15, 1970, appellant filed an application for an extension of time within which to file his 1969 income tax return, giving as his reasons that he was "involved in a one man law office and also serving as County Commissioner" and that the "[p]ress of county business and trial work in District Court [made] it impossible to complete an accurate return on or before the due date." On April 15, 1971, he wrote for an extension of time for his 1970 return, stating that "[t]he press of the legislative session makes it impossible to file federal return on time." In neither of these two applications for time extensions was any mention made of appellant's opposition to the war. Appellant testified that this failure to mention his opposition resulted from vacillation on the difficult decision whether to withhold his taxes.

Further uncertainty regarding the reasons for appellant's failure to file is created by the statements of James Schumacher, Ojala's former attorney. In July, 1973, Schumacher told an Internal Revenue Service agent, in appellant's presence, that ap-

pellant's public claim that his failure to file was because of his opposition to the war was a political ploy and that the real reason for the failure had been neglect, procrastination, and bad bookkeeping. Appellant remained silent when Schumacher made this statement, but did protest to Schumacher both before and after the interview that his reason for not filing was his opposition to the war.

In August, 1972, Minnesota tax authorities informed appellant by letter that they had no record of his having filed tax returns for the years 1969 through 1971. Appellant received this letter and apparently made no response. On October 17, 1972, the state officials asked federal tax officials for copies of appellant's 1969-71 federal tax returns. They were informed by the federal government on October 19, however, that there was no record of any filings for the years in question. Later that month, Ojala was informed by a reporter that his news service had information that appellant had not filed his tax returns for the years in question. Suspecting that the service had been informed of his failure to file for political reasons since he was involved in a close race for reelection, appellant called a press conference on October 30. He there announced that he had at first refused to file the returns because of his opposition to the war but that he had now decided to file late returns, which he in fact did in January, 1973.

Shortly after the press conference, agents of the Internal Revenue Service began an investigation of appellant's failure to file his returns, an investigation in which appellant fully cooperated. The indictment was filed in January, 1974. Prior to trial, appellant moved to dismiss the indictment because of improper selective prosecution. The District Court[1] denied the motion following a hearing. The issue was unsuccessfully raised again at the close of the government's case and in a post-trial motion.

1. The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota.

## I. *Selective Prosecution*

Appellant contends that he was targeted for prosecution because he had exercised his First Amendment rights to protest the Vietnam war, and so was the victim of unconstitutional selective prosecution.

■ The burden of establishing *prima facie* the fact of selective prosecution lies upon the defendant, since "[t]he presumption is always that a prosecution for violation of a criminal law is undertaken in good faith and in nondiscriminatory fashion for the purpose of fulfilling a duty to bring violators to justice." *United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973) (en banc), *quoted in United States v. Crow Dog*, 532 F.2d 1182, 1196 (8th Cir. 1976); *see United States v. Berrigan*, 482 F.2d 171, 177 (3d Cir. 1973). In *United States v. Swanson*, 509 F.2d 1205, 1208–09 (8th Cir. 1975), we approved the two-pronged test of "intentional and purposeful discrimination" set forth by the Second Circuit in *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974):

> To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie*, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as "intentional and purposeful discrimination." * * * Mere "conscious exercise of

some selectivity in enforcement is not in itself a federal constitutional violation." [Citations omitted.]

### A. Intentional Discrimination

Appellant made a strong showing before the District Court that he was selected for prosecution while others similarly situated were not indicted.

Statistical evidence was presented showing that in the years 1969–71 there were approximately 51,000 tax delinquency investigations in Minnesota. During this period, some four thousand instances of possible criminal tax violations in Minnesota were brought to the attention of the IRS Intelligence Division. The Intelligence Division recommended only nine failure to file cases for criminal prosecution in the state.

■ Appellant also made a convincing showing that his case did not emanate from a routine processing through the Collection Division or Audit Division of the Internal Revenue Service but was rather initiated in the Intelligence Division immediately following his public announcement.[2] We think appellant satisfied the first prong of the test for a *prima facie* showing of selective prosecution.

### B. Purposeful Discrimination

Appellant contends that the evidence established an invidious purpose to prosecute him because of his exercise of his First Amendment right to speak out against the war. Such a purpose, if established, would fatally infect the prosecution by denying appellant the equal protection of the laws which is embodied in the due process clause of the Fifth Amendment. *United States v. Falk, supra*, 479 F.2d at 618–20; *United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972).[3] *See also Bolling v. Sharpe*, 347

---

2. Failure of the IRS to follow its normal procedures can provide a warning that a careful examination of the prosecution is necessary. *See* Amsterdam, The One-Sided Sword: Selective Prosecution in Federal Courts, 6 Rutgers-Camden L.J. 1, 11–12 (1974).

3. In *United States v. Steele*, 461 F.2d 1148, 1152 (9th Cir. 1972), the Ninth Circuit stated:

"An enforcement procedure that focuses upon the vocal offender is inherently suspect, since it is vulnerable to the charge that those chosen for prosecution are being punished for their expression of ideas, a constitutionally protected right."

U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *United States v. Crowthers*, 456 F.2d 1074 (4th Cir. 1972).

There seems to be no doubt that appellant's public disclosure of his failure to file in protest against the war triggered the prompt criminal investigation by IRS and the prosecution which followed.[4] The question to be resolved is whether the decision to prosecute was made in reprisal for his outspoken opposition to the war, as appellant contends, or whether the decision was made because appellant's offense was flagrant, as the government contends, and so was within nondiscriminatory standards.[5]

In *United States v. Crowthers, supra*, the Fourth Circuit held that a prosecution under General Services Administration disorderly conduct regulations of anti-war protestors participating in a "Masses for peace" ceremony at the Pentagon was motivated by government opposition to the political views of the protestors and hence could not stand. Sixteen other groups had apparently been permitted to assemble on the same concourse and had not been prosecuted.

■ In contrast to what occurred in *United States v. Falk, supra*, the District Court here provided appellant a full hearing to develop his theory of selective prosecution in violation of First Amendment rights. We review its findings under the "clearly erroneous" standard. The government adduced substantial evidence that its speedy investigation was initiated because appellant, a prominent public figure, had

announced his purposeful refusal to comply with filing requirements because of his political views, without any legal or otherwise justifiable excuse. We think that initiating an investigation and prosecution because of such an announcement by a public figure falls well within the degree of prosecutorial discretion which is historically a part of our criminal justice system.

In *United States v. Swanson, supra*, we upheld a selective program of investigation and prosecution of attorneys, accountants, and other professionals who customarily gave tax advice to others and who should have been knowledgeable about their tax responsibilities. *See also United States v. Wiley*, 503 F.2d 106, 107 (8th Cir. 1974). More recently, the Seventh Circuit has held that political prominence is not an impermissible consideration in the selection process.

> Assuming that the decision to indict Peskin and press for trial was based in part on consideration of his political prominence, this is not an impermissible basis for selection. It makes good sense to prosecute those who will receive the media's attention. Publication of the proceedings may enhance the deterrent effect of the prosecution and maintain public faith in the precept that public officials are not above the law.

*United States v. Peskin*, 527 F.2d 71, 86 (7th Cir. 1975), *cert. denied,* —— U.S. ——, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976).

---

**4.** Federal officials did have notice, prior to the October 30 press conference, of appellant's failure to file; Minnesota officials had inquired about appellant's returns for 1969–71, and the government had replied that there were no filings for the years in question. It is clear from the trial testimony of an IRS agent involved, however, that the investigation was launched as a result of the press conference.

**5.** Appellant further contends that the IRS departed from its standard guidelines in evaluating his failure to file case, giving further evidence of intentional discrimination against him. He relies upon Section P–9–2 of the IRS Intelligence Division Manual, which states that three factors which may be significant in determining prosecutability are (1) a nominal tax deficiency, (2) voluntary disclosure of a violation by the

proposed defendant, and (3) serious or ill health of the proposed defendant. He contends that his tax liability was nominal since it is only because of his wife's income that any additional tax was due and that his disclosure was voluntary since it antedated the formal jacketing of his investigation file. The government, on the other hand, argues that Guideline P–9–2 is a general guideline and would not control a decision to prosecute for failure to file, since the existence of a tax liability is not an element of that misdemeanor offense. It likewise disputes the voluntary nature of the disclosure, since it was clear to the defendant when he made his announcement that the cat was, or shortly would be, out of the bag. *See* note 6, *infra*.

■ The government lacks the means to investigate and prosecute every suspected violation of the tax laws. Selection based in part upon the potential deterrent effect on others serves a legitimate interest in promoting more general compliance with the tax laws, which depend substantially upon a system of voluntary disclosure and reporting.[6] It is difficult to conceive of a more legitimate object of prosecution than one who exploits his own public office and reputation to urge a political position by announcing publicly that he had gone on strike against the tax laws of the nation.[7] In *United States v. Scott*, 521 F.2d 1188, 1195 (9th Cir. 1975), *cert. denied*, 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976), the Ninth Circuit stated:

> Here, appellant has only demonstrated that the government had an announced policy of vigorous enforcement of the tax law against those who took a public stand against filing returns. There was no evidence presented that the government did not prosecute others who failed to file returns but who did not take a vocal stand on the issue. It is not surprising that the government might prosecute those cases in which the violations of the tax laws appeared most flagrant.

*See also United States v. Gardiner*, 531 F.2d 953 (9th Cir. 1976).

■ After a careful review of the record, we are satisfied that there has been no impermissible selective prosecution in violation of appellant's First and Fifth Amendment rights and that the District Court, upon a sufficient hearing, did not err in denying appellant's motions.

## II. *Hearsay Evidence*

Appellant contends it was prejudicial error to admit testimony of IRS agents of statements made to them by appellant's attorney, James Schumacher, that appellant's failure to file was not the result of his political beliefs. These statements were made in appellant's presence and were not contradicted or objected to by him at that time.[8] He contends these statements were hearsay and hence not admissible under Fed.R.Evid. 802. The statements go so directly to the issue of appellant's good faith that we could not consider their admission, if improper, to have been harmless beyond reasonable doubt.

The government relies upon Fed.R.Evid. 801(d), which provides:

> *Statements which are not hearsay.* A statement is not hearsay if—
>
> (2) *Admission by party-opponent.* The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a

---

**6.** In this case, the IRS guidelines for prosecution provided specifically that such deterrence considerations should be taken into account. Those guidelines provide, in part that the following factors should be considered:

(a) "The necessity of placing emphasis on areas where prosecution may have a widespread deterrent or corrective effect" (Guideline P–9–18 # 5).

(b) "The enforcement program will be administered uniformly, applying the same standards to all violations investigated. It is not inconsistent with this principle to select the more aggravated cases, or those whose prosecution is believed to be the most effective in acting as a deterrent to discourage similar violations, when availa-

ble resources preclude investigation and development of all cases." (Guideline P–9–3).

**7.** We assume for purposes of this appeal that appellant was sincerely, if erroneously, motivated to disclose his conduct. That the announcement occurred shortly after appellant learned of the news service's knowledge of his failure to file might cast a shadow on that assumption.

**8.** Schumacher filed an affidavit that appellant protested these statements to him after the interview. Appellant contends his attorney had directed him to remain silent at the interview.

party during the course and in furtherance of the conspiracy.

■ Appellant contends that his attorney's statements were unauthorized and contrary to his instructions. It is clear, however, that the statements were made in an unequivocal manner by one who was acting as appellant's attorney at the time, and that they referred to a matter within the scope of the attorney's authority. The statements were made to a government agent in appellant's presence and he registered no objection or complaint at the time. *See United States v. Freeman*, 519 F.2d 67, 70 (9th Cir. 1975). The circumstances thus partake of each of the ingredients set forth in "B," "C," and "D" of Fed.R.Evid. 801(d)(2). While appellant may have complained to his attorney in advance of the statements, this only confirms that he was aware such statements might be made. He authorized his attorney to make a statement on his behalf; the statement made concerned the subject authorized, and if it did not conform to what appellant expected to be said he had a duty than and there to set the record straight. *See United States v. O'Connor*, 433 F.2d 752, 756 (1st Cir. 1970), *cert. denied*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971). *See also United States v. Freeman, supra.* Appellant was himself an attorney, and we do not think that Schumacher's request that appellant remain silent during ,the interview can explain his failure to protest an alleged crucial misstatement of his intentions in not filing his tax returns, especially after the IRS agent had given appellant adequate warning that he need make no statement at all. *See* Advisory Committee Notes, Fed.R. Evid. 801(d)(2)(B). Given the circumstances described above, the attorney's statements were not hearsay and the District Court properly admitted them. Fed.R.Evid. 801(d)(2)(B).[9]

### III. *Closing Argument*

In the closing arguments of the United States Attorney, the following occurred:

(UNITED STATES ATTORNEY:) He also says, and I direct your attention to the news release, Government's Exhibit 17, that he felt that the money withheld, some $7,000, actually less than five, but he felt that the monies withheld were sufficient to pay for the necessary services of the government. Well, may I remind you that if you feel that way and I feel that way and every other citizen had the right to feel that way, this country would be suffering from anarchy, and if he feels that way about the war, I might feel that way about acts of the legislature shouldn't get money to be paid salaries, or I might feel that instead of the—

MR. THOMPSON: Object to this as improper argument, Your Honor.

THE COURT: Well, it sounds all right. Go ahead, counsel.

Appellant contends such argument was impermissibly inflammatory by "[d]ragging the spector of anarchy into the jury's deliberations," and that the District Court's manner of overruling his objection had the effect of giving the court's imprimatur to the government attorney's statement.

■ The closing arguments of counsel are, of course, limited to the facts in evidence and reasonable inferences flowing therefrom. *United States v. Bledsoe*, 531 F.2d 888, 892 (8th Cir. 1976); *United States v. Martinez*, 514 F.2d 334, 343 (9th Cir. 1975). The argument complained of was not an unreasonable one to make under the circumstances and injected no evidence into the case. It was well within the discretion of the District Court, which heard the remarks in the courtroom, to gauge their inflammatory and unduly prejudicial effect, if any. We find no basis to interfere with the ruling of the experienced trial judge.

### IV. *Instructions*

Appellant contends that the District Court committed prejudicial error in failing properly to instruct the jury on the issue of

---

**9.** In view of this holding, it is unnecessary to discuss the refusal of the District Court to give a cautionary instruction on the weight of such statement.

"willfulness." Specifically, he contends (1) that the court erred in refusing to instruct the jury that, in order to convict appellant, it would have to find that he had a state of mind which manifested a bad purpose or evil motive; (2) that the court improperly minimized the factor of good motive in its instruction; and (3) that the instructions that were given on the concept of "willfulness" were prejudicially contradictory and ambiguous.

 The Supreme Court has recently held that use of the words "bad purpose or evil motive" is not necessary to the proper instruction of a jury on the concept of "willfullness" as used in 26 U.S.C. § 7206. *United ed States v. Pomponio*, —— U.S. ——, ——, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976). The Court expressly approved this Court's similar conclusion in a case involving § 7203. *Id.; see United States v. Pohlman*, 522 F.2d 974, 977 (8th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976). *See also United States v. McCorkle*, 511 F.2d 482, 485 (7th Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975). As this Court stated in *United States v. Pohlman, supra*, such words are "merely another way to convey the concept of willfulness." 522 F.2d at 977. This Court, in *Pohlman*, approved an instruction substantially similar to that given in this case.[10] Appellant's claim thus warrants no relief.

 Finally, appellant contends the District Court unduly minimized the materiality of "motive" in a failure to file case when it gave the following instruction:

> Now, we have been talking about willfulness or intent. They should be distinguished from motive. Intent and motive should never be confused.
>
> Motive is what prompts a person to act or fail to act but intent refers only to the state of mind, the deliberativeness or ab-

sence of it with which the act is done or omitted; and the law is that good motive alone—good motive alone is never a defense where the act done or omitted is a crime. So the motive of the accused is immaterial except so far as evidence of motive may aid the determination of the state of mind or intent.

This minimization of "good motive" was not error in light of our holding in *United States v. Pohlman, supra*, 522 F.2d at 977, that the government is not required to "prove anything beyond establishing that defendant's action was deliberate, intentional and without justifiable excuse, or otherwise stated, a voluntary, intentional violation of a known legal duty" (footnote omitted).

We have examined the instructions carefully and are satisfied that, taken as a whole, they are neither contradictory nor ambiguous, but rather meet the requirements of this Circuit as set forth in *United States v. Pohlman, supra*.

The judgment of conviction is affirmed.

---

10. The suggested instruction reads as follows:
 Willfulness is an essential element of the crime of failure to file an income tax return. The word "willfully" used in connection with this offense means a voluntary, intentional violation of a known legal duty, or otherwise stated, with the wrongful purpose of deliber-

ately intending not to file a return which defendant knew she should have filed, in order to prevent the Government from knowing the extent of, and knowing the facts material to, the determination of her tax liability. 522 F.2d at 977, n. 2.