STATE OF NEBRASKA, APPELLEE, v. WENDELL BIRD HEAD, APPELLANT.

285 N. W. 2d 698

Filed November 27, 1979. No. 42577.

Charles Plantz and David J. Clegg, Western Nebraska Legal Services, for appellant.

Paul L. Douglas, Attorney General, and Mel Kammerlohr, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

The appellant, Wendell Bird Head, was charged in an information by the county attorney of Sheridan County, Nebraska, with the offenses of feloniously entering a building in violation of section 28-533, R. R. S. 1943, and robbery in violation of section 28-414, R. R. S. 1943. Bird Head had been convicted on at least two prior occasions with offenses resulting in prison sentences of not less than 1 year each and, accordingly, the county attorney filed a supplemental information charging Bird Head as a habitual criminal under the provisions of section 29-2221, R. R. S. 1943.

During the course of the trial, Bird Head alleged that the habitual criminal statute had been intentionally and selectively enforced against him and other Native Americans by the county attorney on the basis of race in violation of the Equal Protection Clause of both the Constitution of the United States and the Constitution of the State of Nebraska. After trial, a jury having been waived, the trial court found Bird Head not guilty of feloniously entering a building, guilty of robbery, and guilty of being a habitual criminal. Bird Head was sentenced by the trial court to a term of 15 years in the Nebraska Penal and Correctional Complex. On appeal to this court, Bird Head makes no objection to the trial court finding him guilty of robbery, but again asserts that the filing of the habitual criminal charge is a result of selective enforcement against him and other Native Americans by the county attorney in violation of their equal protection rights.

In overruling Bird Head's claim of racial discrimination, the trial court specifically found that the evidence produced by Bird Head was insufficient to make a prima facie case and insufficient to establish that the habitual criminal statute had in fact been

applied against Bird Head and other Native Americans in an unlawful discriminatory manner. In reviewing the record in this case, we concur with the conclusion of the trial court and affirm the judgment.

Section 29-2221, R. R. S. 1943, provides in part: "Whoever has been twice convicted of crime, sentenced and committed to prison, in this or any other state, or by the United States, or once in this state and once at least in any other state, or by the United States, for terms of not less than one year each, shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal, and shall be punished by imprisonment in the Nebraska Penal and Correctional Complex for a term of not less than ten nor more than sixty years * * *." Bird Head does not argue that he has not twice previously been convicted of a crime, sentenced, and committed to prison for a term of not less than 1 year each, and is not now convicted of a felony committed in this state. Rather, he maintains that the evidence adduced by him at trial establishes a prima facie case of selective or discriminatory prosecution with regard to the habitual criminal act, thereby shifting the burden to the county to rebut the presumption of unconstitutional action.

While the facts in this case may involve a complicated and serious matter, the legal principles applicable are fairly clear. The central purpose of the Fourteenth Amendment to the United States Constitution is the prevention of official conduct which is discriminating on the basis of race. Washington v. Davis, 426 U. S. 229, 96 S. Ct. 2040, 48 L. Ed. 2d 597.

In Washington v. Davis, *supra*, however, it was made clear that the mere fact that a law affects a greater proportion of one race than another does not make it invalid under the Equal Protection Clause. "Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial dis-

crimination forbidden by the Constitution. Standing alone, it does not trigger the rule, * * * that racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations." See, also, McLaughlin v. Florida, 379 U. S. 184, 85 S. Ct. 283, 13 L. Ed. 2d 222.

The Supreme Court of the United States, in the case of Oyler v. Boles, 368 U. S. 448, 82 S. Ct. 501, 7 L. Ed. 2d 446, noted that mere selectivity in enforcement creates no constitutional defect. Before a claim of unlawful discrimination in the enforcement of criminal laws can be invoked, the defendant must allege and prove a deliberate selective process of enforcement based upon race. To support a defense of selective or discriminatory prosecution, a defendant bears a heavy burden of establishing at least prima facie (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution; and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as "intentional and purposeful discrimination." See, United States v. Berrios, 501 F. 2d 1207 (2d Cir., 1974); United States v. Ojala, 544 F. 2d 940 (8th Cir., 1976); United States v. Johnson, 577 F. 2d 1304 (5th Cir., 1978).

It is within the discretion of the county attorney to decide whether a habitual criminal charge should be filed. State v. Reed, 187 Neb. 792, 194 N. W. 2d 179. The fact that the county attorney is permitted a certain discretion and does not use the habitual criminal act in every instance does not make the act itself or its application unconstitutional. State v. Gra-

ham, 192 Neb. 196, 219 N. W. 2d 723.

To be sure, statistical evidence may serve an extremely useful purpose in establishing the selective and discriminatory practices. Discrimination, often by its very nature, is done subtly and without clear overt acts. For that reason an invidious discriminatory purpose may be concluded from all the relevant facts, including the fact that it has been applied more often against one race than another. "The determination ultimately required demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available, * * *." Inmates of Nebraska Penal, Etc. v. Greenholtz, 567 F. 2d 1368 (8th Cir., 1977), cert. den., 99 S. Ct. 132.

The use of statistics in a disputed discrimination case does serve an important role. Teamsters v. United States, 431 U. S. 324, 97 S. Ct. 1843, 52 L. Ed. 2d 396. Statistics showing racial or ethnic imbalance are probative, because such imbalance is often a telltale sign of purposeful discrimination. Castaneda v. Partida, 430 U. S. 482, 97 S. Ct. 1272, 51 L. Ed. 2d 498. Nevertheless, before placing reliance upon statistics, we must be sure that the figures are sufficiently representative as to be reliable. Bird Heard argues that a prima facie case was established by him by proof sufficient to raise an inference of discriminatory prosecution, relying upon United States v. Steele, 461 F. 2d 1148 (9th Cir., 1972), and Inmates of Nebraska Penal, Etc. v. Greenholtz, *supra*. He maintains that, having made such a prima facie case, the burden shifted to the county to explain it away. The evidence upon which he relies to make his "prima facie case" was for the most part statistics provided by the county.

It is true that once a prima facie case is made, the burden of proof shifts to the State to rebut the presumption of unconstitutional action by showing that permissible racially neutral selection criteria and procedure have produced the monochromatic result.

Alexander v. Louisiana, 405 U. S. 625, 92 S. Ct. 1221, 31 L. Ed. 2d 536.

In this instance the prima facie case was not made. Contrary to Bird Head's claim, a prima facie case is not established merely by introducing some slight evidence which might give rise to an inference of discriminatory prosecution. The burden is upon the defendant claiming selective or discriminatory prosecution to meet a *two-fold test:* (1) He must prove that others similarly situated have not been similarly prosecuted, but that he has been *singled out* for prosecution; and (2) the government's discriminatory selection of him has been invidious or in bad faith. We believe an examination of the record in this case supports the trial court's finding that the appellant failed to meet his burden in establishing the two-fold test, and therefore, failed to make a prima facie case.

The evidence introduced by Bird Head disclosed that during the period from 1971 to 1977, 26 individuals were eligible to be charged with violations of the habitual criminal act. Of that number, 18 were Native Americans (69.2 percent) and 8 were Caucasian (30.8 percent). Of those 26 individuals, 8 were charged as habitual criminals. Seven were Native Americans (87.5 percent) and 1 was Caucasian (12.5 percent). On the basis of the figures introduced by Bird Head, 39 percent of the eligible Native Americans were charged as habitual criminals, but only 12.5 percent of the eligible Caucasians were charged. Bird Head therefore argues that, having shown this disproportionate number, he has made a prima facie case of discrimination and the burden now shifts to the county to rebut that presumption. We believe, however, that Bird Head is wrong both with regard to the law in this regard and the evidence as introduced.

The simple fact of the matter is that the statistical information relied on as Bird Head's sole evidence

of discrimination is simply too inconclusive to meet his burden. An inference of purposeful discrimination can arise from any probative evidentiary source, including but not limited to statistics, but as the significance of statistical disparities lessens, the quality and quantity of nonstatistical evidence required to raise the necessary inference become correspondingly greater. See Inmates of Nebraska Penal, Etc. v. Greenholtz, *supra*. In the instance case, had one Native American less been charged and one more eligible Caucasian been charged, virtually no disparity at all would have existed between the number eligible in each class and those actually charged. Such a result only points out the insignificance of the size of the group examined.

Likewise, the trial court, in analyzing the eligible persons over a 7-year period, noted that in 1972, there was only one Caucasian who was eligible to be charged and in fact was charged, while during the same period there were two Native Americans eligible to be charged, and neither were so charged. In 1973, there were seven persons eligible to be charged, three of whom were Native Americans, and four of whom were Caucasian. Of that number only one, a Native American, was charged. In 1974, there was only one person eligible to be charged. In 1975, while there were ten eligible to be charged, only one was Caucasian. Of the ten, only one, a Native American, was in fact charged.

The county attorney testified that there were a host of factors which were taken into account in deciding whether habitual criminal charges should be filed, including the nature of the crime in question and the previous crimes, whether there was the possibility of obtaining a plea bargain by reason of filing the habitual criminal charge, and the total record of the individual. There was no evidence offered by Bird Head other than the numerical figures in support of Bird Head's contention. For the reasons

discussed herein, we believe Bird Head failed to introduce evidence sufficient to establish the two-fold test required in such a case. Having failed to do so, the burden did not shift to the county to rebut the presumption, and the trial court was correct in finding against Bird Head on the issue of discrimination.

Using the habitual criminal statute for purposes of discriminating against a minority class would clearly violate the Equal Protection Clause of both the United States Constitution and the Constitution of the State of Nebraska. Where sufficient evidence is presented to support such a claim, a court should not hesitate for a moment to stop such a practice. No justification for such an action could be given even within a county attorney's broad discretion. The facts here simply do not make even a prima facie case of such discrimination and, therefore, the judgment and sentence must be affirmed. We have reviewed the other assignments of error and in view of our decision find them to be without merit.

AFFIRMED.