STATE of Delaware

v.

Herman M. HOLLOWAY, Jr., Defendant.

Superior Court of Delaware,
New Castle County.

Submitted: April 13, 1983.
Decided: April 21, 1983.

Stephen M. Walther, Deputy Atty. Gen., Dept. of Justice, for State.

Irving Morris, and Kevin Gross, Morris & Rosenthal, P.A., Wilmington, for defendant.

O'HARA, Judge.

The instant case presents this Court with the problem of the nature and quantum of proof necessary to sustain a defense of selective prosecution. The subject prosecution arises from defendant's indictment on July 20, 1982, on two counts of evasion of personal State Income Tax in violation of 30 *Del.C.* § 1231,[1] and two counts of filing false statements on his personal State Tax Return in violation of 30 *Del.C.* § 1234.[2] All of the aforementioned charges pertain to returns filed for the taxable years 1979 and 1981. Defendant seeks to have the indictment against him dismissed on the basis of selective prosecution, citing allegedly discriminatory enforcement of the above cited laws by the State.

Defendant's claim that he was a target figure for prosecution in the instant case originates from both his racial and political status as a black Representative in the General Assembly of the State of Delaware. He further contends that, because of his role as an outspoken, black Democratic legislator, he is the first and only individual whom the State has prosecuted for wilfully underreporting of income and filing a false income tax return separate and apart from any other alleged criminal conduct.

The issue of selective prosecution has limited precedent in this jurisdiction.[3] The seminal cases acknowledging the prohibition against discriminatory enforcement of laws are *Yick Wo v. Hopkins*,[4] 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) and *Oyler v. Boles*,[5] 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). The constraint upon

1. § 1231. Attempt to evade to defeat tax; penalty.

   Any person who wilfully attempts in any manner to evade or defeat any tax imposed by this chapter, or the payment thereof, shall, in addition to other penalties imposed by law, be fined not more than $3,000, or imprisoned not more than 6 months, or both.

2. § 1234. False statements.

   Any person who wilfully makes and subscribes any return, statement or other document, which contains, or is verified by, a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter, or wilfully aids or procures the preparation or presentation in a matter arising under this chapter of a return, affidavit, claim or other document which is fraudulent or is false as to any material matter shall be fined not more than $3,000, or imprisoned not more than 6 months, or both.

3. In *State v. Sanders*, Del.Super., N–80–04–0481–I (unreported opinion dated March 17, 1982), the lone Delaware authority on this point, this Court, considered a defendant's motion to dismiss a charge of failure to file a personal income tax return in violation of 30 *Del.C.* § 1233 on the basis of selective enforcement. Defendant therein, a white resident of this State, asserted that he was the victim of inverse racial discrimination, citing one particular black nonresident whom the State elected not to prosecute for the same offense. The State responded with an affidavit naming four minority group members who had been prose-

cuted. The State further explained that the exercise of its prosecutorial discretion was influenced by factors other than race, such as voluntary filing, terminal illness, and agreements to pay. The *Sanders* Court noted that there were separate statutory provisions for residents and nonresidents, 30 *Del.C.*, Ch. 11, and acknowledged the reasons offered by the State for prosecuting residents before nonresidents, i.e., accessibility of evidence and plausibility of reasons that might be given for failure to comply with the law.

4. *Yick Wo v. Hopkins*, presented the United States Supreme Court with the discriminatory enforcement of a San Francisco city ordinance prohibiting the establishment of laundries, except where located in buildings of brick or stone, absent the permission of the board of supervisors. Appellants therein, proprietors of such a business and citizens of China, applied for and were refused permission to carry on their enterprise. They were subsequently convicted of and imprisoned for violation of the aforementioned ordinance.

5. In *Oyler v. Boles*, petitioners claimed a denial of equal protection in that the habitual criminal statute under which they had been sentenced had been applied to only a fraction of those subject to its provisions. The Supreme Court rejected the defense inasmuch as petitioners failed to allege that the apparent selectivity in invoking the statute was predicated on an unjustifiable standard such as race, religion, or other arbitrary classification.

the conscious exercise of prosecutorial selectivity, which is not a *per se* violation of the Constitution's equal protection guarantee, is articulated in *Yick Wo v. Hopkins,* supra, as follows:

.Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution.

However, co-existing with this constitutional standard is the presumption "that a prosecution for violation of a criminal law is undertaken in good faith and in non-discriminatory fashion for the purpose of fulfilling a duty to bring violators to justice," and accordingly, the burden lies with the defendant to negate the presumed regularity of the prosecution. *United States v. Falk,* 7th Cir., 479 F.2d 616 (1973) (en banc); *see United States v. Crow Dog,* 8th Cir., 532 F.2d 1182 (1976); *United States v. Berrigan,* 3rd Cir., 482 F.2d 171 (1973).

■ The issue of selective prosecution is not an inquiry into the guilt or innocence of the defendant, but rather the search for a defect of constitutional magnitude in the initiation of prosecution. *United States v. Berrigan,* supra. A defendant's dual-pronged burden in establishing a prosecution that is constitutionally violative is defined in *United States v. Berrios,* 2nd Cir., 501 F.2d 1207 (1974) in this language:

To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing at least *prima facie,* (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for

prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as "intentional and purposeful discrimination." * * * Mere "conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." (Citations omitted).

Applying the above cited analysis to the case *sub judice,* the Court concludes that the prosecution of defendant herein is neither "invidious" nor pursued "in bad faith."

## I. INTENTIONAL DISCRIMINATION

■ The Court initially notes that defendant was afforded an evidentiary hearing of six days length[6] on his motion to dismiss, during which hearing the Court entertained extensive testimony germane to the claim of selective prosecution. In response to the first requisite articulated in *United States v. Berrios,* supra, that others similarly situated have not been prosecuted for similar conduct, defendant asserts that he is the first and only individual in Delaware[7] to be indicted for violations of 30 *Del.C.* §§ 1231 and 1234, without any other concomitant charges being filed against him.

The State cites the prosecution of five other individuals on the same charges. Defendant attempts to distinguish these prosecutions on the basis that the indictments therein contained Title 11 criminal charges as well as allegations of Title 30 tax violations. The Court rejects this dichotomy and points out that inquiry into defendant's compliance with the tax laws, as with the cases cited by the State, had its inception as part of a Title 11 criminal investigation, but

---

6. This evidentiary hearing commenced on March 23, 1983 and concluded on March 30, 1983.

7. The State of Delaware enacted a personal income tax in 1929 which became effective in 1930. 36 *Del.Laws,* Ch. 8, Sec. 2.

which did not culminate in an indictment.[8] Furthermore, this Court is not in the business of determining the prosecatorial merit of any criminal conduct under investigation by the Attorney General; such is the exclusive province of that Office alone. The election not to proceed against defendant on other possible concomitant offenses does not impact the constitutionality of the State's prosecution of defendant on the instant charges. To hold otherwise would impose an additional constraint on the exercise of the State's discretion neither anticipated nor authorized by *Yick Wo v. Hopkins,* supra, and its progeny.

Inasmuch as a showing of as few as two or three other prosecutions will negate the assertion that defendant has been singled out for prosecution,[9] the Court holds that the first prong of the *Berrios* test has not been satisfied.

Although this initial deficiency alone thwarts the defense of discriminatory enforcement, this Court feels compelled to also dispose of defendant's arguments concerning the basis of his selection.

## II. PURPOSEFUL DISCRIMINATION

Defendant herein contends that he has established an invidious purpose to prosecute him because of his status as a "controversial, political figure who was highly visible." Although defendant is black, the gravamen of his argument in this regard does not concern his race [10] as much as his role as a politically outspoken figure who has been barraged with media coverage.

■ This Court recognizes that membership in a political party is protected by the First Amendment, and the mere exercise of that right cannot be punished by means of selective prosecution. See *United States v. Falk,* supra; *United States v. Steele,* 9th Cir., 461 F.2d 1148 (1972). However, neither the political affiliation nor the newsworthiness of a defendant in a vacuum suffice to establish an invidious purpose in initiating a prosecution.

Specifically, the Court in *United States v. Peskin,* 7th Cir., 527 F.2d 71 (1975), *cert. den.* 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976) held that political prominence or newsworthiness was not an impermissible basis for selection.[11] This rationale was

---

8. Defendant was originally investigated concerning the possible misuse of Grant-in-Aid money which the General Assembly appropriated in the years 1979, 1980 and 1981 to the Martin Luther King Complaint and Referral Center, Inc. ("King Center"), a private nonprofit organization incorporated in this State in 1976 and of which defendant has served as executive director since 1979. The State, through the Attorney General, initiated an investigation of defendant and the King Center which extended from January 13, 1982 through June 1, 1982. This investigation concluded without prosecution of the defendant or the King Center on a charge of misuse of Grant-in-Aid funds; however, it was from information gleaned from this initial investigation which supplied a basis for pursuing an investigation of defendant in the context of potential tax violations.

   However, defendant was indicted in Kent County on August 2, 1982 on a charge of official misconduct arising from his vote in the General Assembly in June, 1979 on the Grant-in-Aid legislation for July 1, 1979—June 30, 1980.

9. See *United States v. Kahl,* 5th Cir., 583 F.2d 1351 (1978); *United States v. Oaks,* 9th Cir.,

527 F.2d 937 (1975); *United States v. Carson,* D.Conn., 434 F.Supp. 806 (1977).

10. In *Oyler v. Boles,* supra, the Supreme Court rejected a claim of selective prosecution on the ground that "it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."
   The decision in *United States v. Berrigan,* supra, implicitly assumed that relief would be available when intentional or purposeful discrimination was practiced against an individual (even though the discrimination was not class-based). Other courts have concurred in that result. E.g., *United States v. Falk,* supra; *Moss v. Hornig,* 2nd Cir., 314 F.2d 89 (1963). Thus, although we may assume for this case that prosecutorial decisions based on the defendant's affiliation in one political party or another is the sort of "arbitrary classification" contemplated by *Oyler v. Boles,* supra, it is clear that defendant could raise his claim of selective prosecution based on individual discrimination.

11. The *Peskin* Court observed:
   It makes good sense to prosecute those who will receive the media's attention. Publication

approved in *United States v. Ojala,* 8th Cir., 544 F.2d 940 (1976), offering commentary appropriate to the instant case:

> The government lacks the means to investigate and prosecute every suspected violation of the tax laws. Selection based in part upon the potential deterrent effect on others serves a legitimate interest in promoting more general compliance with the tax laws, which depend substantially upon a system of voluntary disclosure and reporting.[12]

▮ As evidenced by the *Ojala* and *Peskin* decisions, the fact of political prominence alone as a basis for selection does not render the prosecutor's exercise of discretion constitutionally infirm. However, where enforcement of laws operates as a substantive abridgement of First Amendment rights, the second prong of the *Berrios* test will generally be satisfied. In this regard, defendant's allegations are deficient and distinguish his case from the precedents upon which he relies.

For example, in *United States v. Steele,* supra, those persons prosecuted under 13 U.S.C. § 221(a) had participated in a census resistance movement and publicly decried the census as an unconstitutional invasion of privacy, urging the public to avoid compliance with the census requirement. In the absence of any other proffered justification for selection of these offenders for prosecution, the Court reversed defendants' convictions. Similarly, *United States v. Crowthers,* 4th Cir., 456 F.2d 1074 (1972), addressed the prosecution of participants in an unauthorized "Mass for Peace" in the Pentagon concourse for violations of 41 C.F.R. § 101–19.304 relating to disorderly conduct on government property. The Court held that the government's selective enforcement of the regulation impermissibly operated to permit the expression of those viewpoints it found pleasing while suppressing the dissemination of those ideas which were not favored.[13]

In contrast, defendant herein relies on the nebulous assertion that he was targeted for prosecution solely because he is an outspoken black politician. He cites no specific political views which might place him in disfavor with the administration, nor any other First Amendment conduct which the prosecuting agency herein might have sought to abridge. The mere fact that the Attorney General who initiated the prosecution is a Republican, while defendant is a Democrat, is insufficient to place defendant within the purview of the aforementioned

---

of the proceedings may enhance the deterrent effect of the prosecution and maintain public faith in the precept that public officials are not above the law.

12. The facts advanced by defendant herein in support of his position in fact substantiate the *Ojala* rationale. Defendant claims that there exists in the possession of the State Division of Revenue records supplied by the Internal Revenue Service revealing the identity of at least 2,000 taxpayers each in the years 1979 and 1981 who understated their personal income on their tax returns. Admittedly, there has never existed within either the Division of Revenue nor Department of Justice a section or department specifically responsible for the enforcement of 30 *Del.C.* §§ 1231 or 1234.
As defendant pointed out earlier, the few occasions which yield an indictment for a *wilful* violation of the tax laws generally arise in the context of a criminal (Title 11) investigation—precisely because there is no other mechanism for enforcement of §§ 1231 and 1234. At this juncture, the legitimacy of the State's purpose

in prosecuting the few violations its limited resources uncover is patent.

13. Although the appellant in *United States v. Berrios,* supra, did not prevail with his claim, he likewise contended that he was selected for prosecution because he was counted among the few Teamsters officials who were in 1972 outspoken in their support of Senator McGovern for President as against President Nixon and because he was at that time spearheading an effort to unionize the Marriott Restaurant chain, an enterprise that enjoyed close ties with the Nixon family. *See also United States v. Berrigan,* supra, (appellants argued that their prosecution was conducted for political reasons, because of their efforts to end the use of United States military forces in Southeast Asia); *United States v. Ojala,* supra, (appellant contended that he was targeted for prosecution because of his outspoken opposition to the Vietnam War); *United States v. Falk,* supra, (where the government prosecuted only those who spoke out against the Selective Service laws).

precedents wherein a defendant's political stance rendered his prosecution suspect.

Defendant next cites the State's lack of any standards, criteria or policies governing the enforcement of 30 *Del.C.* §§ 1231 and 1234 as rendering his selection for prosecution arbitrary. Although the existence of articulated criteria for prosecution defeated the defendant's claim of discriminatory enforcement in *State v. Sanders,* supra, this Court does not find the absence thereof fatal to the prosecution. Defendant further contends that the State had an oral tradition of non-enforcement of its tax laws akin to the official written policy of non-enforcement of the Selective Service laws at issue in *United States v. Falk,* supra.[14] However, defendant himself acknowledges the fact that there simply is no mechanism for the criminal investigation of Title 30 violators within the Division of Revenue; the Court does not find this deficiency in the State's investigative resources to be tantamount to a policy of non-enforcement.

Finally, defendant claims that he was never afforded a pre-indictment opportunity to respond to the charges against him, contrary to the customary Division of Revenue practice with respect to civil tax offenders. The defendant's position in this respect is purely argumentative, unsupported by any authority, and is unpersuasive as an indication of purposeful discrimi-nation. This conclusion is further buttressed by the testimony of former Attorney General Richard S. Gebelein that, although he announced on July 14, 1982 his decision to proceed with the indictment, he further invited defendant, through his attorney, to come forward with any information or evidence which might render prosecution unnecessary. The only action taken thereafter by defendant was to invite the Attorney General to participate in an interrogation of defendant's accountant, who had already been interviewed by the Attorney General staff. In the absence of any other response, the indictment issued six days later. Defendant never contradicted this testimony and, therefore, his basic contention is further weakened.

In conclusion, the Court fails to discern either intentional or purposeful discrimination on the part of the State in advancing defendant's prosecution. Accordingly, the defendant's motion to dismiss on the ground of selective prosecution must be denied.

IT IS SO ORDERED.

14. Although defendant relies heavily on *Falk,* it is clearly distinguishable. There the defendant, who had been indicted for failure to possess his Selective Service draft card, offered to prove that approximately 25,000 Selective Service registrants who had disposed of their draft cards had not been prosecuted, even though the government was aware of many of these other violations. Indeed, it was conceded that there existed an official policy statement issued by the Director of the Selective Service System to the effect that those who turned in their cards should not be prosecuted.