UNITED STATES of America,
Plaintiff–Appellant,

v.

James C. HASTINGS, Defendant–
Appellee.

No. 96–4462.

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1997.

Decided Sept. 17, 1997.

**ARGUED:** Karen Marie Quesnel, Tax Division, United States Department of Justice, Washington, DC, for Appellant. Thomas Kieran Maher, Rudolf & Maher, P.A., Chapel Hill, NC, for Appellee. **ON BRIEF:** Loretta C. Argrett, Assistant Attorney General, Robert E. Lindsay, Alan Hechtkopf, Scott A. Schumacher, Mark T. Calloway, United States Attorney, Tax Division, United States Department of Justice, Washington, DC, for Appellant. David S. Rudolf, Rudolf & Maher, P.A., Chapel Hill, NC, for Appellee.

Before MURNAGHAN, ERVIN and WILKINS, Circuit Judges.

Reversed and remanded by published opinion. Judge ERVIN wrote the opinion, in which Judge MURNAGHAN and Judge WILKINS joined.

## OPINION

ERVIN, Circuit Judge:

The United States indicted James C. Hastings for failing to file several years of federal income tax returns. Three decisions made by the district court are at issue in this appeal. First, the district court ordered the government to produce discovery related to Hastings' claim that he was selectively prosecuted because he is a Republican. Second, the district court ordered the government to disclose certain documents which the government argues are protected by the law enforcement privilege. Third, the district court ultimately dismissed the indictment against Hastings as a sanction for the government's failure to cooperate with the court's discovery orders. The government appeals each of these decisions. For the reasons hereinafter explored, we reverse the district court's decision to grant Hastings discovery on the issue of selective prosecution. We also reverse the dismissal of the indictment. We decline to reach the issue of privilege because it is made moot by our decision that discovery

regarding selective prosecution was not warranted.

## I

Hastings is a prominent businessman and Republican Party leader in Boone, North Carolina. He failed to timely file income tax returns with the federal government from 1988–1991. Hastings owed substantial taxes for some of those years and was entitled to a less substantial credit or refund in one of those years.

The Internal Revenue Service (IRS) began to investigate Hastings on the basis of a computer-generated referral in May 1992, which indicated he had failed to file returns. The resulting civil investigation revealed that Hastings had an earned interest and wage income alone of more than $170,000 during the years at issue; that he owns more than $610,000 in real estate; that he lives in a lavish home; that he is partner in several business enterprises; that he owns a restaurant franchise; and that he had paid very few taxes for the years at issue through withholding and tax payments. The investigation did, however, show that Hastings had a substantial tax credit from an overpayment in 1987.

Based upon this information, the IRS began a criminal investigation. The official referral to the criminal investigatory unit within the IRS was made in January 1993. The referral form was completed by Revenue Agent Tanya Schmidt, who had been part of the initial civil investigation. In the section of the form allowing for "remarks," Schmidt mentioned the above listed factors. She also mentioned that Hastings has ties to Jim Gardner, a former Republican gubernatorial candidate. Schmidt acknowledged in the report that Hastings' income for two of the four years at issue was "low," implying that it was lower than the threshold for most criminal prosecutions; however, she noted that she nonetheless thought the case should be considered ·for prosecution because of Hastings' prominence in the community, because he owns a substantial amount of real estate, and because his behavior in the past indicated that he is aware of the income tax filing requirements.

When the Hastings case was transferred to the IRS's criminal division, it was assigned to Special Agent Lori Coombs. Coombs also investigated all aspects of Hastings' case. She interviewed, among other persons, Officer Kennedy of the Boone Police Department. Although he knew little about Hastings' tax law violations, he did tell Coombs that Hastings is a prominent Republican. Coombs also interviewed Schmidt, who told her that once Schmidt saw Hastings' lavish lifestyle she passed the case along to the criminal division for further action. Although Schmidt also told Coombs about Hastings being a prominent Republican, she did not say that this was a reason the case had been forwarded for criminal investigation.

Hastings was aware that the criminal division was investigating him and he was contacted and interviewed by IRS agents in the spring of 1993. In September 1993, several months after he had been informed of the investigation, Hastings finally filed the delinquent tax returns. The IRS's investigation ultimately revealed that Hastings had earned more than $7,000,000 in gross income during the years in question, and had failed to timely pay more than $150,000 in taxes for the years 1990 and 1991. The IRS formally recommended prosecution of Hastings to the Department of Justice's Tax Division in November 1994. In a June 1995 memorandum written by Coombs regarding the Hastings investigation, she mentioned Hastings' political prominence and attached a newspaper article about Hastings' business life and political aspirations.

In 1995 the grand jury indicted Hastings for failure to file his tax returns. Hastings sought to have the indictment dismissed on the ground that he was being unfairly and selectively targeted for prosecution. In support of his request for discovery to support this claim, Hastings submitted the affidavit of Gary Mathes, who had been an IRS agent from 1973 to 1980. Mathes stated that, in his experience, most taxpayers who file returns delinquently are dealt with civilly rather than criminally. He stated that criminal prosecutions are only made when there are

indicia of fraud on the part of the delinquent taxpayer.

In November 1995, the district court found that Hastings had made an adequate initial showing of selective prosecution and ordered the government to provide Hastings with discovery relevant to that claim. The government at first refused to comply with the discovery order and requested that the court withdraw it. The government then reluctantly provided much of the ordered discovery material, but did so in an untimely fashion, missing the deadline set by the court by several days.

Further, although the government provided Hastings with most of the requested discovery materials, it declined to turn over a portion of the IRS's Law Enforcement Manual. The government asserted that that portion of the Manual, known as LEMV, was protected by the law enforcement privilege because it contains confidential, sensitive information, the disclosure of which would hamper the government's ability to deter and prosecute tax evasion and other tax-related crimes. Ultimately, following extensive briefing, a hearing on the matter, and an *in camera* review of LEMV, the district court held that, although LEMV was privileged, the government had to provide it to Hastings because his need for the document outweighed the government interest in keeping LEMV secret. However, the government continued to refuse to turn LEMV over to Hastings. Eventually, the indictment against Hastings was dismissed as a penalty for the government's repeated violations of discovery orders. The government then brought the instant appeal.

## II

The government asserts that the district court erroneously granted discovery on the issue of selective prosecution. We recently made clear in *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir.1996), that we review a district court's decision to order discovery regarding a selective prosecution claim *de novo*, because we are addressing the "legal adequacy" of the evidence offered by the defendant.

### A

The equal protection component of the Due Process Clause of the Fifth Amendment mandates that the decision to prosecute a particular criminal case may not be based upon an "unjustifiable" factor such as race, religion, or another arbitrary classification. *See United States v. Armstrong*, ⸺ U.S. ⸺, ⸺, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996). A prosecution also cannot be motivated by a suspect's exercise of constitutional rights through participation in political activity. *See United States v. Marcum*, 16 F.3d 599, 602 (4th Cir.1994); *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974). However, absent a substantial showing to the contrary, governmental actions such as the decision to prosecute are presumed to be motivated solely by proper considerations. *See Armstrong*, ⸺ U.S. at ⸺, 116 S.Ct. at 1486; *United States v. Mezzanatto*, 513 U.S. 196, 210, 115 S.Ct. 797, 805–06, 130 L.Ed.2d 697 (1995).

A criminal defendant bears a heavy burden in proving that he has been selected for prosecution in contravention of his constitutional rights. A defendant "must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Armstrong*, ⸺ U.S. at ⸺, 116 S.Ct. at 1487 (internal quotation marks and citations omitted). We have held, in a case concerning allegations of racially biased prosecution, that a defendant must establish "*both* (1) that similarly situated individuals of a different race were not prosecuted, and (2) that the decision to prosecute was invidious or in bad faith." *Olvis*, 97 F.3d at 743 (internal quotation marks and citations omitted) (emphasis added).

We have also held that similar standards apply when a defendant seeks discovery in support of a selective prosecution claim. Before a defendant can obtain discovery from the government on this issue, he or she "must produce 'some evidence' making' a credible showing' of both discriminatory effect and discriminatory intent." *Olvis*, 97 F.3d at 743 (quoting *Armstrong*, ⸺ U.S. at ⸺ ⸺, 116 S.Ct. at 1488–89). As the

Court made clear in *Armstrong* the evidentiary threshold required before discovery will be granted is a rigorous one, intended to be "a significant barrier to the litigation of insubstantial claims." *Armstrong,* —— U.S. at ——, 116 S.Ct. at 1486.

## B

▮ Applying these standards to the instant case, in order to affirm the district court's decision to grant discovery it is necessary for us to find that Hastings offered credible evidence to prove each of the two prongs of his selective prosecution claim. We find Hastings in fact satisfied neither prong of the test, and therefore we hold that the grant of discovery was inappropriate.

With respect to the intent prong set forth in *Armstrong,* Hastings offers two theories in support of his claim that his prosecution was the product of discriminatory intent. He first argues that the prosecution of his case was motivated by unconstitutional animus because he is a Republican. In support of this allegation he points to the memoranda written by the civil and criminal investigators of the IRS. In those memoranda Hastings was described as a prominent businessman, an active Republican, and someone with connections to certain Republican candidates for office. Hastings encourages us to find that the prosecutors were motivated by these facts in deciding to pursue a case against him. For several reasons, we conclude that Hastings' arguments are without merit.

First, none of the memoranda actually state that Hastings' political affiliation is the reason for pursuit of the case against him. For example, in the memo written by Schmidt when she forwarded Hastings' case to the criminal division, she mentioned that Hastings had connections to a former candidate for governor. She did not say that those connections had anything to do with the decision to refer the case for criminal investigation. In fact, when Schmidt listed the reasons supporting pursuit of a criminal case against Hastings, she mentioned his expansive real estate and business holdings and the fact that he was certainly aware of his obligations under the tax laws. Schmidt's affidavit supports the conclusion that Hastings' property, substantial earnings, lifestyle and repeated failure to file tax returns led to the decision to prosecute. The other forms and memos upon which Hastings relies similarly described his political, business, and community prominence, but his party affiliation was never described as a reason for the prosecution.

▮ Second, even if there were some evidence of political animus on the part of the IRS's civil or criminal division there is no evidence that the government official who actually made the decision to prosecute the case was motivated by impermissible considerations. We will not impute the unlawful biases of the investigating agents to the persons ultimately responsible for the prosecution. *See United States v. Hendricks,* No. 1:96CR87, Slip op. (W.D.N.C. May 19, 1997) (declining to adopt a theory of "imputed vindictiveness" in assessing a selective prosecution claim); *United States v. Monsoor,* 77 F.3d 1031, 1035 (7th Cir.1996) (holding that "the animus of a referring agency is not, without more, imputed to federal prosecutors"); *United States v. Goulding,* 26 F.3d 656, 662 (7th Cir.1994) (finding that the relevant bias is that of the agents who actually make the decision to prosecute).

▮ Hastings' second argument with respect to discriminatory intent is that, even if he was not prosecuted because he is Republican, he satisfies this prong of the *Armstrong* test because the IRS improperly considered his general prominence in the community when deciding to prosecute. Hastings asserts that it is not permissible for prominence to be considered as a factor which militates in favor of prosecution, particularly when that prominence is due to a defendant's political activities. We do not agree.

It seems likely that Hastings' prominence in the community was a factor that supported, if not actually motivated, the decision to refer Hastings' case for possible criminal charges. However, Hastings points us to no authority that supports the proposition that prominence itself is not a valid factor to weigh in favor of a criminal prosecution. In contrast, the government cites several cases in which courts have found that a person's

public renown may be properly considered among other factors when deciding whether to pursue criminal sanctions for a violation of the law. For instance, in *United States v. Saade*, 652 F.2d 1126, 1136 n. 14 (1st Cir. 1981), the First Circuit stated that the increased deterrent effect of prosecution of prominent figures is a legitimate consideration in favor of prosecution. *See also United States v. Catlett*, 584 F.2d 864, 868 (8th Cir.1978) ("Since the government lacks the means to investigate and prosecute every suspected violation of the tax laws, it makes good sense to prosecute those who will receive, or are likely to receive, the attention of the media."); *United States v. Ojala*, 544 F.2d 940, 944–45 (8th Cir.1976) (holding that the potential deterrent effect of prosecuting a well-known person is a valid consideration in the prosecutorial decision); *United States v. Peskin*, 527 F.2d 71, 86 (7th Cir.1975) ("Assuming that the decision to indict Peskin and press for trial was based in part on considerations of his political prominence, this is not an impermissible basis for selection.").[1]

With respect to the discriminatory intent prong of the *Armstrong* test, we conclude that Hastings offers no information, aside from his own interpretation of the referral forms, to support his claim that his prosecution was motivated by discrimination or unconstitutional considerations such as his political activity. This is simply inadequate to satisfy his burden of proof on this issue.

### C

■ The evidence Hastings provided the district court to prove the discriminatory effect prong of his selective prosecution claim is even less compelling. Hastings' evidence on this matter came entirely from the affidavit of a former IRS agent, Gary Mathes. Mathes stated that, based upon the information told him, presumably by Hastings or his counsel, Hastings' case is not the sort that is generally subject to criminal prosecution. The former agent also said that he knew of no similar cases which had been criminally prosecuted. This single affidavit is simply inadequate to sustain the "significant burden" of proof Hastings faces before being entitled to discovery.

In *Olvis*, 97 F.3d at 743, we discussed the relevant legal standard for determining when a pattern of prosecution has a discriminatory effect. A defendant must show that similarly situated persons outside of the constitutionally protected class are not being prosecuted. In determining whether persons are in fact similarly situated a court must examine all factors relevant to the government's decision to prosecute. *Id.* at 744. In *Olvis*, for instance, we found that many legitimate considerations justified prosecution of the indicted black defendants in the case but not the white co-conspirators, including the greater role in the conspiracy played by the black defendants and the white conspirators' voluntary cooperation with law enforcement. We held that "defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Id.*

Given these stringent requirements, it is apparent that Hastings did not meet his burden of proof with respect to discriminatory effect. Hastings is unable to show that there were other persons with similar characteristics who were spared prosecution because of their political affiliation. In fact, he is unable to show that *any* other person not prosecuted has *any* of the characteristics identified by the IRS as warranting prosecution in Hastings' case, such as a lavish lifestyle, a significant tax debt, substantial earnings and property holdings, and clear knowledge of tax laws and obligations. Since the only evidence Hastings presented to the district court is that prosecution is not common for delinquent filers in the experience of a single

---

1. Hastings attempts to distinguish *Ojala* and *Saade*, arguing that the defendants in those cases gained their political prominence in part through the activities for which they were being prosecuted, such as publicly refusing to pay taxes in protest of the Vietnam War. This is not a compelling distinction because the language of those decisions never says that prominence is only properly considered in such cases. Moreover, Hastings concedes that *Peskin* cannot be distinguished on this ground as the defendant in that case was a former state representative whose prominence was unrelated to his crimes.

former IRS employee, he has not satisfied what is supposed to be a substantial evidentiary burden.

Hastings also offers statistical evidence to support his claim of discriminatory impact. We note that this evidence was not presented to the district court before it ordered discovery, but was in fact obtained as a part of the discovery provided by the government; therefore, we should not consider these statistics when deciding whether Hastings made the requisite initial showing to prove that he is entitled to discovery. *See* F.R.A.P. 10(a); *United States v. Russell,* 971 F.2d 1098, 1112 (4th Cir.1992) (holding that a party may not rely, on appeal, on evidence which was not in the record before the district court). Even if these statistics had been before the district court when it made its decision, however, they do not sustain Hastings' burden of proof. The statistical evidence suggests that the IRS department which referred Hastings' case for criminal action referred only twelve of more than 37,000 delinquent filers for prosecution, and that only one case other than Hastings' had been prosecuted in the Western District of North Carolina.[2] Again, Hastings does not show that *any* of the thousands of persons not prosecuted had the same characteristics militating in favor of prosecution as Hastings. He also does not show that most, or even any, of the few persons who were pursued for criminal investigations were Republicans.[3]

We conclude that Hastings was unable to prove to the district court either element necessary to support his claim of selective prosecution, and he remains unable to provide the required proof even now. Therefore, the district court erred when it ordered the government to provide discovery to Hastings on this issue. As we made clear in *Olvis,* the government should neither be subjected to adjudication nor discovery burdens on a selective prosecution claim unless the defendant can show both discriminatory intent and discriminatory impact. Neither showing was made in the instant case.

### III

The government next argues that the district court erroneously dismissed the indictment against Hastings as a sanction for the government's refusal to provide complete discovery on the selective prosecution claim. The government specifically asserts that, because it should not have been ordered to provide discovery on the selective prosecution issue, it may not be sanctioned for its failure to comply with that order.

▮ We agree that dismissal of the indictment was inappropriate, but we do not agree that the government should not have been sanctioned in any way. We review a district court's decision to sanction a party for discovery violations for an abuse of discretion. *See United States v. Muse,* 83 F.3d 672, 675 (4th Cir.1996).

▮ In the instant case, once the district court granted Hastings' motion for discovery on the issue of selective prosecution, the government had two options. It could have refused to comply with the discovery order, accepted dismissal of the indictment, and immediately appealed the issue. This was the option taken by the government in *Olvis,* 97 F.3d at 741. The other option open to the government was to comply with the discovery order in good faith having noted its objection, and save appeal of the issue for later, after the court had decided the merits of the claim of selective prosecution. Instead the government selected an improper third option when it both refused to comply in good faith with the discovery order because it did not agree with the district court's

2. The time frame of these statistics is not clear from the record.

3. Hastings similarly relies on an affidavit from William Pinna, a tax attorney. Pinna said that, in his many years of practice, all delinquent filers he had represented had been handled civilly, including one person who had failed to file returns for three years and owed more than $100,000. As with the statistics, however, Pinna's affidavit was not before the district court when it made its decision regarding discovery. Moreover, Pinna's affidavit does not show that the taxpayer he described as similar to Hastings was in fact similar in all respects relevant to prosecution. For instance, that person may have been unable to pay the delinquent taxes or unaware of his tax responsibility. Pinna's affidavit simply does not support Hastings' assertions.

decision, and sought to avoid dismissal of the indictment. The government refused to comply with the court's order and compile certain pieces of documentation data regarding Hastings' selective prosecution claim until it had been ordered to do so several times. Even when the government did undertake to produce relevant evidence, it did so in an untimely fashion. This reluctant and recalcitrant behavior does not satisfy the good faith standard to which the government must adhere when faced with a court order.

 We hold, therefore, that it was not an abuse of discretion for the district court to sanction the government in some way for its recalcitrance. However, we further hold that dismissal of the indictment against Hastings was an extreme and inappropriate sanction. When a court sanctions the government in a criminal case for its failure to obey court orders, it must use the least severe sanction which will adequately punish the government and secure future compliance. *See United States v. Maples,* 60 F.3d 244, 247 (6th Cir.1995); *United States v. Perez,* 960 F.2d 1569, 1572 (11th Cir.1992). In determining a suitable and effective sanction, a court must weigh the reasons for the government's delay and whether it acted intentionally or in bad faith; the degree of prejudice, if any, suffered by the defendant; and whether any less severe sanction will remedy the prejudice and the wrongdoing of the government. *See Maples,* 60 F.3d at 247; *see also United States v. Shaffer Equip. Co.,* 11 F.3d 450, 463–64 (4th Cir.1993) (employing similar factors in a civil context).

When these factors are applied in Hastings' case, it is clear that complete dismissal of the indictment was too severe a sanction to punish the government. Hastings is unable to show that he suffered prejudice beyond the inconvenience and slight expense of delays caused by the government's slow compliance. This relatively slight harm must be weighed against the public interest in seeing an alleged tax evader stand trial. A less severe sanction should have been considered by the district court in the instant case.

### IV

Because we conclude that Hastings is not entitled to discovery on the selective prosecution claim, we need not reach the government's remaining contention on appeal. Specifically, the government argues that one of the IRS documents it was required to give to Hastings in discovery, LEMV, was privileged and therefore should have been protected from disclosure. However, that document was only relevant to Hastings' selective prosecution argument. Therefore we need not address whether the document would be specially protected from disclosure due to privilege were Hastings in fact entitled to discovery on this issue.

### V

For the reasons explored above, we hold that Hastings is not entitled to pursue a claim of selective prosecution or to receive discovery on that claim. We further hold that the indictment against him should be reinstated, although the district court may, on remand, order a lesser sanction as a punishment for the government's discovery violations. Therefore the decision of the district court is

*REVERSED AND REMANDED.*