UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                          No. 02-4038

ALFRED MILTON RIVERA,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CR-01-75)

Argued: December 4, 2002

Decided: January 6, 2003

Before WILKINSON, Chief Judge, and WILLIAMS and
MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** John Joseph Korzen, ANDERSON, KORZEN & ASSO-
CIATES, Kernersville, North Carolina, for Appellant. Harry L. Hob-
good, Assistant United States Attorney, Greensboro, North Carolina,
for Appellee. **ON BRIEF:** Anna Mills Wagoner, United States Attor-
ney, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Alfred Milton Rivera ("Rivera") was convicted by a jury of violating 21 U.S.C. § 841, Possession with Intent to Distribute Cocaine Base. Rivera now seeks to dismiss the federal indictment against him on the grounds that it was the result of a vindictive prosecution and therefore violated his due process rights. Finding no merit to this claim, we affirm the judgment of the district court.

I.

The circumstances relevant to the present federal prosecution began in 1995, when then Forsyth County Assistant District Attorney Robert Lang unsuccessfully prosecuted Rivera for possession of illegal drugs. Lang subsequently prosecuted Rivera on two counts of first degree murder in 1997. The jury returned a guilty verdict and Rivera was sentenced to death. However on appeal the North Carolina Supreme Court vacated the jury's verdict and awarded Rivera a new trial. In November 1999, Rivera was retried by a different prosecutor and acquitted.

On the evening of December 29, 2000, Rivera and another passenger were driving a rental car in downtown Winston-Salem, North Carolina, when Officer R.B. Readus of the Winston-Salem Police Department observed Rivera run through a red light. Officer Readus followed Rivera and activated his siren to signal Rivera to stop. Rivera pulled his car onto a side street and parked.

Each time Officer Readus approached Rivera's side window during the traffic stop, he detected a strong odor of marijuana. Officer Readus asked Rivera to step out of the car and walk around to the trunk. Rivera consented to be searched. During the search, Officer

Readus found a small amount of marijuana and $2,354.01 in cash, and 67.4 grams of cocaine base ("crack") in Rivera's clothing.

Officer Readus then placed Rivera under arrest. The state charged Rivera with possession of marijuana, possession of drug paraphernalia, three counts of felonious trafficking in cocaine, one count of felonious possession with intent to manufacture, sell, and deliver cocaine, and one count of felonious maintenance of a vehicle for keeping and selling controlled substances.

Rivera made his initial appearance in state court in early January 2001. Robert Lang, who no longer worked for the Forsyth County District Attorney's Office and had become an Assistant United States Attorney for the Middle District of North Carolina, was in the courtroom at the time of this appearance. It is unclear whether Lang was attending Rivera's initial appearance in a professional or personal capacity, as Lang testified that he was present in state court that day for dual purposes. First, his duties as a member of the Winston-Salem Violence Reduction Task Force sometimes brought him to state court initial detention hearings. On the day in question, Confucius Patterson, who had been a target of the task force, was also scheduled to make an initial appearance. Second, Lang testified that he was in court that day to observe Rivera's arraignment, which he had heard about from his brother-in-law and from the press.

During Rivera's initial state court hearing, Rivera's attorney, Doug Meese, revealed that Rivera had two prior felony drug convictions. After the hearing, Lang approached Meese and asked him if Rivera did indeed have two prior felony drug convictions. When Meese confirmed this information, Lang made a statement about taking Rivera's case to federal court.

In the ensuing days, Lang spoke to two Forsyth County Assistant District Attorneys concerning the charges against Rivera. Lang also spoke to Cliff Barrett, the criminal division chief for the United States Attorney's Office (USAO) for the Middle District of North Carolina, to discuss the charges against Rivera. Barrett informed Lang that he was aware of the charges against Rivera and also of Lang's activities concerning the case. Barrett then plainly instructed Lang to have no further involvement in the case. Barrett did not tell Lang at that point

whether or not the United States would take the case. Instead, he told Barrett that the case would need to proceed before the Organized Crime Drug Enforcement Task Force (OCDETF) for review.

Rivera was subsequently indicted on federal charges on February 27, 2001. Because of the impending federal prosecution, the state felony drug charges against Rivera were dismissed. A jury found Rivera guilty of the federal drug charges and, because of his two prior drug felonies, Rivera was sentenced to a mandatory minimum term of life imprisonment.

## II.

Rivera contends that the federal indictment against him should be dismissed because it was brought in retaliation for his successful exercise of his right to appeal his state court murder conviction. A prosecutor cannot punish a defendant for exercising his rights. *United States v. Goodwin*, 457 U.S. 368, 372 (1982). However, "[t]he imposition of punishment is the very purpose of virtually all criminal proceedings." *Id.* Therefore, a punitive motivation alone "does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity." *Id.* at 372-73. In order to establish prosecutorial vindictiveness, a defendant must show both that "the prosecutor acted with genuine animus toward the defendant" and that "the defendant would not have been prosecuted but for that animus." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001).

If a defendant cannot produce direct evidence of a vindictive motive he can establish a rebuttable presumption of vindictiveness by showing that "a reasonable likelihood of vindictiveness exists." *Goodwin*, 457 U.S. at 373. If he succeeds, the burden then shifts to the government to present objective evidence justifying its conduct. *Id.* at 374. The weight of the evidence is viewed, however, in the context of "the presumption of regularity" that attends prosecutorial decisions. *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citation omitted). Thus, "in the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to

file or bring before a grand jury, generally rests entirely in his discretion." *Id.* (internal quotations omitted).

## III.

Rivera argues that Lang's prior prosecutorial involvement with him, Lang's attendance at his first state court appearance in the instant case, Lang's statement to his counsel after the initial appearance, and Lang's phone call to Barrett about his case constitute sufficient evidence to support a presumption of vindictiveness. Rivera also argues that the district court concluded that a presumption of vindictiveness arises on these facts. We do not, however, need to reach that question. The government has plainly presented sufficient evidence to rebut any presumption that Lang's alleged animus had any influence on the decision to indict Rivera on federal charges.

We note at the outset that most successful vindictive prosecution claims involve retaliatory prosecutions by the same sovereign that earlier brought defendant to trial. *See, e.g.*, *Goodwin*, 457 U.S. at 381. Here, the alleged vindictive prosecution was brought by a different sovereign altogether. *See United States v. Robison*, 644 F.2d 1270, 1273 (9th Cir. 1981) (expressing "doubt as to whether a prosecution could be condemned as 'vindictive' when the defendant's claim is that one sovereign is punishing him for rights he asserted against a different sovereign."). There is likewise no indication that Rivera was intimidated from exercising any right in any proceedings.

To overcome this difficulty, Rivera attempts to link the earlier state prosecution and the current federal prosecution through Lang's involvement in both. In so doing, however, Rivera ignores the fact that Lang was not involved in the decision to indict him on federal charges. The district court found it unclear whether Lang attended Rivera's initial state court appearance in a professional or personal capacity. But even if we were to assume Lang did harbor some animus towards Rivera, this court cannot "impute the unlawful biases of the investigating agents to the persons ultimately responsible for the prosecution." *United States v. Hastings*, 126 F.3d 310, 314 (4th Cir. 1997).

As soon as Barrett learned of Lang's activities, Barrett directed Lang to cease any further involvement in Rivera's case. At that point,

the decision whether or not to indict Rivera on federal charges lay completely in the hands of the OCDETF. Furthermore, the district court found no evidence that Lang's alleged animus somehow tainted the process through which the OCDETF decided to indict Rivera. Any improper animus on Lang's part was therefore neutralized by Barrett's direction that Lang have no further involvement in the case.

Furthermore, the government demonstrated valid federal interests in prosecuting Rivera in federal court. Rivera possessed a large amount of crack cocaine when he was arrested. Under the USAO policy guidelines, if an individual possesses in excess of 50 grams of cocaine base his case will be considered for federal prosecution. Moreover, the USAO considers a suspect's criminal history in determining whether to press federal charges. Here, Rivera's prior convictions potentially qualified him as a career offender under the United States Sentencing Guidelines. Therefore Rivera's case fell squarely within USAO guidelines for obtaining a federal indictment.

## IV.

Rivera's sole allegation of vindictiveness stems from Lang's role in Rivera's case. However, because Lang was excluded from the decision whether or not to federally prosecute Rivera, the government has successfully rebutted any presumption of vindictiveness that might have arisen from Lang's involvement.* The judgment of the district court is therefore

*AFFIRMED.*

---

*We have reviewed Rivera's *Apprendi* challenge to the prosecutor's failure to include his prior convictions in the indictment and find it without merit.