UNITED STATES of America,

v.

Michael GUESS, Defendant.

CRIMINAL NO. 4:07–CR–112–2

United States District Court,
E.D. Virginia,
Newport News Division.

Signed November 3, 2016

Eric M. Hurt, United States Attorney's Office, Newport News, VA, for United States of America.

Bryan Leslie Saunders, Law Office of Bryan L. Saunders, Newport News, VA, Suzanne Victoria Katchmar, Office of the Federal Public Defender, Norfolk, VA, for Defendant.

## OPINION AND ORDER

ROBERT G. DOUMAR, UNITED STATES DISTRICT JUDGE

On October 17, 2016, Michael Guess ("Defendant") appeared before the Court concerning a number of supervised release violations. For the reasons set forth herein and explained at the hearing, the Court **REVOKED** the supervision previously imposed. This Order serves to elaborate on some of the findings the Court made at the October 17, 2016 hearing.

## I. FACTUAL AND PROCEDURAL HISTORY

On November 19, 2007, Defendant pled guilty to: Conspiracy to Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846 and 841(a)(1), a Class A Felony (Count One); and (2) Use of a Firearm During Drug Trafficking, in violation of 18 U.S.C. § 924(c), also a Class A Felony (Count Eleven). ECF No. 104.

On March 17, 2008, this Court sentenced Defendant to 168 months of imprisonment for Count One and sixty months of imprisonment for Count Eleven, with these terms of imprisonment to run consecutively for a total of 228 months. ECF No. 150. Supervised release was set at five years. Id. On October 31, 2014, this Court reduced Defendant's sentence, upon the Government's Motion for Substantial Assistance, to a total term of 114 months. ECF No. 267. On December 9, 2014, upon the Government's Motion for Reduction of Sentence based on the Crack Cocaine Amendment, 18 U.S.C. § 3582(c)(2), this Court further reduced Defendant's sentence to 112 months total (56 months on Count One and 56 months on Count Eleven, to run consecutively). ECF No. 268.

Defendant began his five years of supervised release on November 27, 2015. See Pet., June 30, 2016, ECF No. 282. The Court ordered a Summons on June 30, 2016. ECF No. 284. Since the Summons

was issued, five addenda to the Petition have been filed. Both the Petition and Addenda allege a variety of supervised release violations, which are as follows: (1) commission of a crime, driving while intoxicated; (2) failure to follow the instructions of the probation officer; (3) failure to submit monthly supervision reporters; and (4) possession of marijuana. See Pet., June 30, 2016, ECF No. 282; Addendum to Pet., July 13, 2016, ECF No. 285; Second Addendum to Pet., August 11, 2016, ECF No. 291; Third Addendum to Pet., Sept. 21, 2016, ECF No. 292; Fourth Addendum to Pet., Sept. 30, 2016, ECF No. 293; and Fifth Addendum to Pet., Oct. 17, 2016, ECF No. 295.

All of the alleged violations constituted Grade C violations with the exception of possession of marijuana, which the probation officer determined constituted a Grade B violation. Defendant had a criminal history category of III. Accordingly, pursuant to the Revocation Table set forth in § 7B1.4 of the Sentencing Guidelines Manual, Defendant's recommended range of imprisonment for a Grade B violation was eight to fourteen months. U.S. Sentencing Commission, Guidelines Manual, § 7B1.4(c) (Nov. 2015) (hereinafter "Guidelines Manual"). Defendant's recommended range for a Grade C violation was five to eleven months. Id.

On October 17, 2016, the Court held a hearing on the alleged violations. ECF No. 294. At the hearing, Defendant stipulated to the violations set forth in the Petition. However, Defendant argued that the Court should continue the matter for sixty to ninety days to permit Defendant to continue participating in drug treatment programs; or, in the alternative, impose home confinement to permit Defendant to continue substance abuse treatment; or, in the alternative, consider Defendant's mari-

juana possession a Grade C violation and impose five months of imprisonment.

## II. LEGAL STANDARD

### A. REVOCATION OF SUPERVISED RELEASE

18 U.S.C. § 3583(e)(3) permits the court to revoke a criminal defendant's supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release[.]" However, in certain circumstances, revocation is mandatory. Under 18 U.S.C. § 3583(g), if the defendant:

(1) possesses a controlled substance in violation of the condition set forth in subsection (d); . . . or

(4) as a part of drug testing, tests positive for illegal controlled substances more than three times over the course of one year;

the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).

### B. THE UNITED STATES SENTENCING GUIDELINES

Under the Sentencing Guidelines, supervised release violations are divided into three grades: Grade A, Grade B, and Grade C. Guidelines Manual, § 7B1.1(a). Grade C violations are the lowest classification and include "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." Id. Grade B violations are those offenses not in the specific categories of more serious crimes delineated in Grade A, but "punishable by a term of imprisonment exceeding one year." Id. At issue was whether Defendant's possession of marijuana qualified as a Grade B or a Grade C violation.

Simple possession of a controlled substance is criminalized by 21 U.S.C. § 844.

Possession in violation of § 844 is a normally a misdemeanor, punishable by one year or less. Thus, most supervised release violations based on simple possession would constitute Grade C violations. However, if a defendant has previously been convicted of Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841, the defendant may be eligible for a sentencing enhancement under § 844 that would prescribe a maximum term of imprisonment of two years. 21 U.S.C. § 844(a). Any such enhanced § 844 violation would therefore constitute a Grade B violation.

■ Since Defendant was previously convicted of Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841, Defendant's Possession of Marijuana rendered him eligible for a § 844 sentencing enhancement, and thus a maximum term of imprisonment of two years. The probation officer therefore considered Defendant's marijuana possession a Grade B violation.

## III. ANALYSIS

### A. FEDERAL REGULATION OF MARIJUANA

What troubled the Court at the hearing, however, was not the classification of possession of marijuana as a Grade B or a Grade C violation, but whether—given the evolving state of the laws criminalizing possession of marijuana—the Court could punish Defendant for possession of marijuana. In light of this, the Court feels it would be appropriate to review such an evolution and its impact on cases such as the one at hand.

### 1. The Controlled Substances Act

In 1970, the passage of the Controlled Substances Act ("CSA") classified marijuana—along with LSD, heroin, and other serious narcotics—as a Schedule I drug. Schedule I drugs are those with (1) a high

potential for abuse; (2) no currently accepted medical use in treatment in the United States; and (3) a lack of accepted safety for the use of the drug under medical supervision. Pub. L. No. 91–513, 84 Stat. 1246 (codified as amended at 21 U.S.C. §§ 812 (2012)). Under the CSA, manufacturing, distributing, and possessing Schedule I narcotics is prohibited, and doctors cannot prescribe them at the risk of losing their Drug Enforcement Administration license. Erwin Chemerinsky et al., Cooperative Federalism and Marijuana Regulation, 62 UCLA L. Rev. 74, 81–86 (2015). In 1987, the Sentencing Guidelines for marijuana were promulgated and have remained unchanged. Cf. Guidelines Manual § 2D1.1(c) (1987); Guidelines Manual § 2D1.1(c) (2012).

## 2. The Evolution of the Legal Landscape

However, since the passage of the CSA and the Guidelines for marijuana, state-level marijuana laws have evolved significantly. Currently, simple possession of marijuana is legal under state law in Arizona, Colorado, Oregon, and Washington, as well as in Washington, D.C.[1] On November 8, 2016, voters in California, Massachusetts, Maine, Arizona, and Nevada will determine whether such possession will become legal under their respective states' laws.[2] Furthermore, a growing number of states permit possession of marijuana for medical use,[3] while other states have decriminalized, to varying extents, possession of small amounts of marijuana.[4]

In response, the federal government has changed its stance on prosecuting possession, cultivation, and distribution cases. Although the Department of Justice ("DOJ") did not explicitly state that it would not prosecute such cases in states where state laws have legalized, to varying extents, marijuana possession, cultivation, and distribution, DOJ has set forth a series of enforcement priorities that have made it clear that the focus of federal prosecution is on large scale distribution.

An October 19, 2009 memorandum from Deputy Attorney General David Ogden set forth "uniform guidance" regarding "core federal enforcement priorities" to federal prosecutors in states that had enacted laws authorizing the medical use of marijuana. The memo clarified that Assistant United States Attorneys ("AUSAs") "should not focus federal resources in [their states] on individuals"—namely, patients and their caregivers—"whose actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana." The memorandum then listed seven types of activities that would belie such clear and unambiguous compliance:

1. Thomas Fuller, Election May Be a Turning Point for Legal Marijuana, N.Y. Times (Oct. 24, 2016), at A1.

2. Id.

3. Currently, Alaska, Arizona, California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and Washington, as well as Washington, D.C., have laws regulating the medical use of marijuana. Both Ohio and Pennsylvania have passed bills regulating the medical use of marijuana, but these bills are not yet operational. National Conference of State Legislatures, State Medical Marijuana Laws: Table 1 (September 29, 2016), http://www.ncsl.org/research/health/state-medical-marijuana-laws.aspx.

4. These states include California, Connecticut, Delaware, Illinois, Maine, Maryland, Massachusetts, Minnesota, Mississippi, Nebraska, Nevada, New York, North Carolina, Ohio, Rhode Island, and Vermont. National Conference of State Legislatures, Marijuana Overview: Decriminalization (September 2, 2016), http://www.ncsl.org/research/civil-and-criminal-justice/marijuana-overview.aspx#2.

unlawful possession or unlawful use of firearms; violence; sales to minors; financial and marketing activities inconsistent with the terms, conditions, or purposes of state law, including evidence of money laundering activity and/or financial gains or excessive amounts of cash inconsistent with purported compliance with state or local law; amounts of marijuana inconsistent with purported compliance with state or local law; illegal possession or sale of other controlled substances; or ties to other criminal enterprises. Memorandum from David W. Ogden, Deputy Att'y Gen. of the United States, to United States Attorneys regarding Investigations and Prosecutions in States Authorizing the Use of Marijuana (October 19, 2009) (hereinafter "Ogden Memo"). Thereafter, a 2011 memorandum from Deputy Attorney General James Cole reiterated the Ogden Memo's focus on prosecuting commercial cultivators, sellers, or distributors. Memorandum from James M. Cole, Deputy Att'y Gen. of the United States, to United States Attorneys regarding Guidance Regarding the Ogden Memo in Jurisdictions Seeking to Authorize Marijuana for Medical Use (June 29, 2011).

On August 29, 2013, DOJ further clarified its prosecution priorities in light of state ballot initiatives legalizing the possession of small amounts of marijuana under state law. Noting that "Congress has determined that marijuana is a dangerous drug and that illegal distribution and the sale of marijuana is a serious crime that provides a significant source of revenue to large-scale criminal enterprises, gangs, and cartels," DOJ nonetheless reiterated and expanded the prosecution priorities originally sketched out in the Ogden Memo to encompass eight prosecution priorities for AUSAs:

- Preventing the distribution of marijuana to minors;

- Preventing revenue from the sale of marijuana from going to criminal enterprises, gangs, and cartels;
- Preventing the diversion of marijuana from states where it is legal under state law in some form to other states;
- Preventing state-authorized marijuana activity from being used as a cover or pretext for the trafficking of other illegal drugs or other illegal activity;
- Preventing violence and the use of firearms in the cultivation and distribution of marijuana;
- Preventing drugged driving and the exacerbation of other adverse public health consequences associated with marijuana use;
- Preventing the growing of marijuana on public lands and the attendant public safety and environmental dangers posed by marijuana production on public lands; and
- Preventing marijuana possession or use on federal property.

Memorandum from James M. Cole, Deputy Att'y Gen. of the United States, to United States Attorneys regarding Guidance Regarding Marijuana Enforcement (August 13, 2013) (hereinafter "Cole Memo").

In 2014, DOJ also explained to AUSAs that, with respect to marijuana-related financial crimes, "in determining whether to charge individuals or institutions with any [ ] offenses based on marijuana-related violations of the CSA, prosecutors should apply the eight enforcement priorities described in [the Cole Memo] and reiterated [in the 2014 memo]." Thus, "if a financial institution or individual offers services to a marijuana-related business whose activities do not implicate any of the eight priority factors, prosecution for these offenses may not be appropriate." Memorandum from James M. Cole, Deputy Att'y Gen. of

the United States, to United States Attorneys regarding Guidance Regarding Marijuana Related Financial Crimes (February 14, 2014).

Executive branch officials have continuously and publicly reiterated such an enforcement policy. In 2009, Attorney General Eric Holder explained that DOJ's enforcement policy with respect to medical marijuana offenses was to prioritize prosecution of "serious drug traffickers" rather than patients. Press Release, U.S. Dep't of Justice, Office of Public Affairs, Attorney General Announces Formal Medical Marijuana Guidelines (Oct. 19, 2009). In 2013 testimony before the Senate Committee on the Judiciary, Deputy Attorney General Cole noted that DOJ was cooperating with banking regulators to permit marijuana trafficking operations that are in compliance with state laws and regulations to deposit their proceeds in, and otherwise transact business with, banks. Conflicts Between State and Federal Marijuana Laws: Hearing Before the Sen. Comm. on the Judiciary, 113 Cong. 588 (2013) (oral testimony of James M. Cole, Deputy Att'y Gen. of the United States).

To be sure, such policy statements are precisely that—policy statements. These guidelines are strictly internal and unenforceable at law. The memoranda continue to emphasize that marijuana possession remains illegal under federal law and that neither such guidance from DOJ nor state or local law provides a legal defense to a violation of federal law. See Cole Memo, at 4 ("This memorandum is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal.") See also United States v. Hicks, 722 F.Supp.2d 829, 833 (E.D. Mich. 2010).

Nonetheless, this interaction between state law and federal policy creates three related issues that collectively trouble this Court: (1) it is apparent that AUSAs in states in which possession of marijuana has been legalized or decriminalized will refrain from prosecuting possession, cultivation, and distribution cases, so long as potential defendants are (a) in compliance with state law and regulations and (b) do not run afoul of the eight federal enforcement priorities; (2) this, in turn, creates uncertainty as to the CSA's application and the federal prosecution of marijuana offenses; and (3) consequently, such uncertainty impacts district courts' consideration of the 18 U.S.C. § 3553(a) factors when sentencing defendants for marijuana possession, cultivation, or distribution.

United State v. Dayi, 980 F.Supp.2d 682, 688–90 (D. Md. 2013) also considered these issues. There, the court was faced with sentencing twenty-two defendants in a series of related cases involving an interstate conspiracy to distribute marijuana and launder the proceeds. Ultimately, the court granted a two-level downward variance to each defendant's sentence. In explaining its reasoning, the court noted that the recent shift in the legal landscape governing marijuana possession, in combination with the accompanying federal policy of non-enforcement, meant that a strict Guidelines sentence for the defendants would inadequately reflect the 18 U.S.C. § 3553(a) sentencing factors. In particular, the court expressed concern over two factors: that the sentence reflect the seriousness of the offense, § 3553(a)(2)(A), and the need to avoid unwarranted sentencing disparities, § 3553(a)(6):

The seriousness of violations of federal marijuana laws has been undercut by (1) recent state enactments decriminalizing, legalizing, and regulating not only the possession of marijuana but also its cultivation, distribution and sale, and (2) the federal government's expanding policy of non-enforcement .... Further, the Justice Department's enforcement policy

suggests that the executive branch of the federal government condones this new approach. The result is an undeniable signal that violating federal marijuana laws is not as serious an offense as it once was .... Ultimately, the Court finds that, in 2013, strict Guidelines sentences would overstate the seriousness of the underlying offenses and therefore fail 'to reflect the seriousness of the offense ....'

The Court also finds that Guidelines sentences in these cases would fail to address the [need to avoid unwarranted sentencing disparities]. The Court construes this factor broadly, interpreting it as a command to ensure that sentences comport with the notion of equal justice under law. The Justice Department has decided it will not prosecute certain marijuana traffickers, including large-scale commercial distributors who, in compliance with state laws and regulations, establish retail outlets that cater to recreational marijuana users in Colorado and Washington .... [Although there are some differences between the defendants and retailers in Colorado and Washington,] [t]he Court ... finds it should use its sentencing discretion to dampen the disparate effects of prosecutorial priorities.

Like the Dayi court, this Court is troubled by the unequal application of law that results from the current state of marijuana laws, which leaves criminal defendants facing imprisonment under federal law for activities that their counterparts in states that have legalized marijuana possession will not face prosecution for. Furthermore, the CSA and the accompanying uniform federal enforcement of the CSA are argu-

ably intended to give certainty and notice to the public as to what activities are and are not legal under the CSA. However, the current state of the law—in which state law either legalizes or criminalizes marijuana; federal law criminalizes marijuana; and federal policy does not enforce the federal criminalization of marijuana depending on a defendant's geographic location—creates an untenable grey area in which such certainty and notice have effectively, if not formally, been eradicated. See Chemerinsky et al., 62 UCLA L. Rev. 74 at 90–101.[5]

In this Court's view, this results in two legal problems with respect to either prosecuting an individual or revoking supervised release based on simple possession: (1) unequal prosecution, and (2) unwarranted sentencing disparities.

### B. Unequal Application of the Law

#### 1. Unequal Prosecution

First, the Court believes that punishing this Defendant for his use of marijuana creates a problem of unequal prosecution of the law analogous to selective prosecution.

 Selective prosecution occurs in violation of the equal protection component of the Due Process Clause of the Fifth Amendment "when the decision to prosecute a particular criminal case" is "based upon an 'unjustifiable' factor such as race, religion, or another arbitrary classification." United States v. Hastings, 126 F.3d 310, 313 (4th Cir. 1997) (quoting United States v. Armstrong, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996)); see also Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). A defen-

---

**5.** Even individuals in possession of marijuana in a state that had legalized its recreational use "could be facing federal drug charges tomorrow" based on a shift in DOJ policy; "because their actions violate existing federal law, there would be no ex post facto bar to prosecuting marijuana [possessors] for conduct they undertook while the nonenforcement prosecutorial guidance was in effect." Alex Kreit, What Will Federal Marijuana Reform Look Like?, 65 Case W. Res. L. R. 689, 693–94 (2015).

dant "must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." Armstrong, 517 U.S. at 465, 116 S.Ct. 1480 (internal quotation marks and citations omitted); see also Hastings, 126 F.3d at 313.

In addition, Armstrong—in which the Supreme Court considered whether an African American defendant who claimed to have been singled out for prosecution on the basis of his race was entitled to discovery vis-à-vis his claim—held that the defendant was not entitled because he had failed to satisfy a threshold showing "that the Government declined to prosecute similarly situated suspects of other races." 517 U.S. at 456, 116 S.Ct. 1480. Armstrong explained that the "similarly situated" threshold was necessary because, when seeking to "challenge an exercise of one of the core powers of the Executive Branch of the Federal Government, the power to prosecute," "there should be certainty to every intent [of selective prosecution]." Armstrong, 517 U.S. at 466–67, 116 S.Ct. 1480 (1996) (quoting Ah Sin v. Wittman, 198 U.S. 500, 508, 25 S.Ct. 756, 49 L.Ed. 1142) (internal citations omitted)).

This Court does not purport to suggest that prosecution of marijuana possession in this District is the result of a discriminatory purpose akin to that outlined in Armstrong, such as race or religion. Furthermore, as noted in Armstrong, the "power to prosecute" is a "core" function of the Executive Branch, and this Court does not second-guess the ability of DOJ to prosecute marijuana offenses pursuant to federal law, under which possession, cultivation, and distribution remain illegal.

But the executive branch has decided to enforce its laws against some individuals and not against others—the essence of selective prosecution—depending on where one resides. For example, the federal government will prosecute an individual in Virginia for the same crime that would not be prosecuted in Washington or Colorado. Thus, the federal prosecutorial policy with respect to marijuana possession produces an effect that is, at least to a degree, undoubtedly and strikingly similar to the effect of selective prosecution: it results in the prosecution of certain individuals (marijuana possessors not in contravention of DOJ's enforcement priorities) for a crime that other, similarly-situated individuals (fellow marijuana possessors also not in contravention of DOJ's enforcement priorities) are not prosecuted for. This difference is based on what is arguably a relatively arbitrary classification: which state one resides in. And, at the very least—beyond any analogies one may draw to selective prosecution—applying and enforcing federal marijuana laws in some states but not others appears inconsistent with the principle of equal application of the law. See Kreit, 65 Case W. L. R. at 696.

This is not the only district court to take note of this effect of prosecutorial priorities: as was discussed, in Dayi, 980 F.Supp.2d at 689, the District of Maryland granted a two-level downward variance in Defendants' Guidelines range following their conviction for conspiracy to distribute marijuana in order to, among other reasons, "dampen the disparate effects of prosecutorial priorities." The court recognized that the similarities between the conspirators in that case and commercial distributors in states in which marijuana cultivation and distribution had been legalized had created the effect of placing similarly-situated individuals in very different criminal postures depending on where they lived—which is, at least in this Court's view, based on a relatively arbitrary classification.

### 2. Unwarranted Sentencing Disparities

Second, the Court believes that punishing Defendant for possession of marijuana

creates a disparity of sentencing problem. The Sentencing Reform Act of 1984 was passed to reduce the disparate treatment of similarly situated individuals in sentencing. Guidelines Manual, Ch. 1 Pt. A(1)(3) ("Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders."). Accordingly, the Act mandates that when a court imposes a sentence, it consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ." 18 U.S.C. § 3553(a)(6).

Since DOJ has generally decided not to prosecute individuals for simple possession of marijuana in states such as Colorado, this Court believes that there will be no uniformity in sentencing if this Court punishes an individual for the same offense. The Court questions how it can comply with the mandate of 18 U.S.C. § 3553 in sentencing a defendant under federal law in Virginia for activities that will not be prosecuted under federal law in Colorado and thus will receive no sentence. Both individuals have engaged in the same conduct; although under federal law, the acts of both individuals constitute offense conduct, only one will serve a sentence for it. This clearly contravenes the underlying directive of 18 U.S.C. § 3553(a)(6) by sentencing two defendants with "similar records" and guilty of "similar conduct" to starkly disparate terms of imprisonment. In a possession case, a defendant in Virginia would receive under a year of imprisonment, while a defendant in Colorado would receive no term of imprisonment at all.

As discussed above, Dayi also recognized the implications of the changing treatment of marijuana under state law and by federal prosecutors for the § 3553(a) sentencing factors, particularly the requirements that any sentence imposed (1) reflect the seriousness of the offense, § 3553(a)(2)(A)[6] and (2) "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6). With regard to unwarranted sentencing disparities, Dayi drew comparisons between large-scale commercial distributors of marijuana who establish retail outlets in Colorado and Washington in compliance with state laws and regulations—whom DOJ would not prosecute and thus would not be sentenced to a term of imprisonment—and the defendants in that case. The court recognized that although they were not identical,[7] the enterprise nonetheless bore "some similarity" to commercial distributors in Colorado and Washington. This similarity was enough for the Dayi court to use its sentencing discretion grant a two-level downward variance to each defendant's sentence. Id. at 690.

## C. DEFENDANT'S SUPERVISED RELEASE VIOLATION

Nonetheless, what are presently before the Court are petitions on supervised release violations. Ultimately, the question before the Court is not whether possession

---

**6.** The Dayi court recognized that, given the federal policy of non-enforcement and the change in state law, a strict Guidelines sentence would overstate the seriousness of the offense. 980 F.Supp.2d at 688. Furthermore, this Court questions how a Guidelines sentence can "promote respect for the law" when it remains unclear to defendants and

the public how the law will be enforced. See supra III.A.2, III.B.1.

**7.** The enterprise the defendants engaged in did not comply with any state laws and implicated several of the federal prosecution priorities.

of marijuana is a crime for which one can be federally prosecuted in Virginia, but whether Defendant violated the conditions of his supervised release. One of the conditions of Defendant's supervised release was that he "refrain from any unlawful use of a controlled substance." See J., ECF No. 150, at 3. Under federal law, marijuana is a controlled substance and Defendant was found to have possessed marijuana on at least five occasions. Another condition of Defendant's supervised release was that he "not commit another federal, state, or local crime." Id. In Virginia, possession of marijuana is both a federal and a state crime. Defendant did not contest his use of marijuana. Consequently, the Court found that Defendant had violated the conditions of his supervised release and reluctantly imposed sentence.

In Hicks, 722 F.Supp.2d 829, the Eastern District of Michigan considered a very similar case. There, the defendant was on federal supervised release when he was arrested because police found marijuana in his car during a traffic stop. Id. at 831. The probation office petitioned the court to issue an arrest warrant, on the assumption that the defendant had violated the terms of his supervised release. Id. The defendant, however, claimed that his possession of marijuana was not in violation of his conditions of supervised release because he possessed a legal amount under the Michigan Medical Marijuana Act and had the appropriate certification. Id. at 832. He cited the Attorney General's policy on medical marijuana and argued that, since the federal government would not prosecute him for possessing medical marijuana, the court should not find him in violation of his supervised release. Id. at 833.

The Hicks court rejected the defendant's argument and explained, "The Department of Justice's discretionary decision to direct its resources elsewhere does not mean that the federal government now lacks the power to prosecute those who possess marijuana." Id. at 833. "Moreover, even if [the Department of Justice's statements] somehow provide a defense to prosecution for possession of medical marijuana, which they do not, this is not a prosecution for possession of marijuana. Instead, it is a prosecution for alleged violations of Defendant's supervised-release conditions ...." Id. at 834. The Hicks court reasoned that violations of conditions of supervised release are unique because "a court may restrict the otherwise legal behavior of a defendant on supervised release"—thus, "[a] sentencing court may ... prohibit the possession of marijuana as a condition of supervised release even if such possession is permitted under state law, and even if such possession one day becomes legal under federal law." Id. at 835.

Ultimately—regardless of this Court's concerns over disparity of sentencing and unequal prosecution—this Court agrees with the Hicks decision. What are before this Court are violations of conditions of supervised release, which, as the Hicks court noted, are "unique." Through supervised release, a court may fashion conditions for a defendant that restrict that defendant's ability to participate in activities that are otherwise legal under state or federal law. Even if possession of marijuana were legal under Virginia law (which it is not) or under federal law (which it also is not but which DOJ prosecutes unequally), the Court could properly order a defendant not to do so. Analogously, though alcohol consumption is legal under Virginia and federal law, the Court may restrict a defendant's alcohol consumption as a condition of supervised release; thus, if a defendant were to violate that condition, the defendant's release may be revoked for what would otherwise be a legal activity under Virginia and federal law. In turn, a court may also fashion terms of supervised release for a defendant that include conditions that do not apply to the general

population. In fact, Defendant's other alleged violations—besides the prohibition on driving while intoxicated—included conditions that the general population is not subject to: participation in substance abuse treatment, submission of supervision reports, and following the instructions of the probation officer.

Thus, there was no question that Defendant violated the terms of his supervised release. However, because of the Court's concerns about disparity of sentencing and unequal prosecution, the Court took issue with the appropriate sentence. As noted above, for a Grade B violation, Defendant's recommended range of imprisonment was eight to fourteen months. For a Grade C violation, Defendant's recommended range was five to eleven months. The Court did not decide whether possession of marijuana should be considered a Grade B or a Grade C violation but determined that a sentence of eight months was appropriate to deter Defendant and afford adequate punishment while reducing concerns about disparity of sentencing.

## IV. CONCLUSION

Based on Defendant's stipulation, the Court **FOUND** that the Defendant violated the terms of his supervised release and **REVOKED** the supervision previously imposed. Defendant was thereby committed to the custody of the Bureau of Prisons for an **EIGHT (8) MONTH TERM OF IMPRISONMENT.** Upon release from confinement, Defendant **SHALL NOT SERVE ANY FURTHER TERM OF SUPERVISED RELEASE.** The Clerk is **DIRECTED** to deliver a copy of this Order to all Counsel of Record in the case.

**IT IS SO ORDERED.**